326 F.Supp. 1113 (1971)
OZARK AIR LINES, INC., a Corporation, Plaintiff,
v.
Lester L. COX et al., Defendants.
No. 71 C 197(3).
United States District Court, E. D. Missouri, E. D.
April 15, 1971.
*1114 Veryl L. Riddle, Thomas S. McPheeters, Jr., Roger Edgar, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for plaintiff.
Lon Hocker, Hocker, Goodwin, Koenig, Gibbons & Fehlig, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
WEBSTER, District Judge.
This action was commenced on April 1, 1971 by the filing of a verified complaint by plaintiff, Ozark Air Lines, Inc. The action was brought to obtain an injunction enjoining the defendants and all persons controlled by them or in active concert or participation with them from proceeding with their alleged plan or plans to take over the management of Ozark. The defendants are alleged to have violated Section 13(d) of the Securities Exchange Act of 1934 (the Act). (15 U.S.C. 78m(d)).
The plaintiff has moved for a temporary restraining order which seeks to enjoin the defendants from soliciting proxies from the common shareholders of Ozark in favor of the defendants or their nominees for the election of directors at the annual meeting of shareholders to be held on May 21, 1971. Similarly, the plaintiff seeks to enjoin the defendants from voting the Ozark shares beneficially owned by them for directors other than those nominated by management at the same meeting. This motion was filed with the complaint. On April 2, 1971, the Court entered its order to show cause and directed that a copy of the order be mailed by the clerk to each of the defendants by registered mail. The clerk has filed his certificate indicating that all defendants have been so notified with the exception of defendant Joseph D. Caldara. As to this defendant, the plaintiff's attorneys have filed a certificate indicating that they notified this defendant by wire on April 9, 1971 of the pendency of this action and of the further fact that this Court had entered an order to show cause directed to such defendant.
A return to the order to show cause has been filed on behalf of defendants *1115 Lester E. Cox Medical Center, Lester L. Cox, Clarence L. Tabor, Lon Hocker, Raymond M. Dunn and John K. Hulston. Additionally, defendant Albert W. Thomson, a member of the firm of Linde, Thomson, Van Dyke, Fairchild & Langworthy, appeared at the hearing but took no active part in the proceedings. Mr. Thomson entered his appearance on behalf of defendants M. J. Coen, Midland Securities Co., Inc., Edwin B. Wright. Neither Mr. Thomson nor the defendants whom he represents have as yet filed any pleading.
Although the plaintiff styled its motion as a motion for a temporary restraining order the plaintiff and the defendants enumerated in the preceding paragraph stipulated at the hearing before the Court on April 9, 1971 that the proceeding was to be one for a preliminary injunction.[1]
To sustain the issuance of a preliminary injunction plaintiff must make a showing of probable cause for ultimate relief on the merits. Bath Industries, Inc. v. Blot, 305 F.Supp. 526 (E.D.Wisc. 1969); Chicago South Shore & South Bend R. R. v. Monon Railroad, 235 F. Supp. 984, 985 (N.D.Ill.1964). See also Pan American Sulphur Co. v. Susquehanna Corp., CCH Fed.Sec.L.Rep. § 92,473 (W.D.Texas 1969).

FINDINGS OF FACT
Plaintiff, Ozark Air Lines, Inc. ("Ozark"), is a Missouri corporation engaged as a common carrier under certification of the Civil Aeronautics Board in the transportation by air of passengers, mail and freight. Ozark is a local service or regional carrier operating principally in the Middle West, with routes extending to New York, Washington, D. C., Denver and Dallas. Ozark's principal executive offices are in St. Louis County, Missouri.
Ozark presently has outstanding slightly more than 6,000,000 shares of common stock, and these constitute its only voting securities. Ozark's common stock is listed on the American Stock Exchange and is therefore registered as a class of equity securities under Section 12 of the Securities Exchange Act of 1934.
Defendant Lester E. Cox Medical Center ("Cox Medical Center") is a Missouri general not for profit corporation which operates a 663 bed hospital in Springfield, Missouri. It has no shareholders.
Defendant Lester L. Cox is the Chairman of the Board of Cox Medical Center, for life.
Cox Medical Center is the sole beneficiary of a trust containing 500,000 shares of Ozark's common stock created under the Will of Floyd W. Jones, who died in February, 1969. Cox Medical Center is also the residuary legatee under the Will of Floyd W. Jones, deceased, and, subject to a bequest of 5,000 shares of Ozark common stock and payment of costs of administration, will receive an additional 534,176 shares of Ozark common stock.
Cox Medical Center received the initial approval of the Civil Aeronautics Board to acquire the 16.53% of Ozark's common stock willed to it by Floyd W. Jones March 24, 1970. Although Cox Medical Center denies that it is the beneficial holder of more than 10% of Ozark's stock and that it became such subsequent to the passage of Section 13(d) of the Securities Exchange Act of 1934, the Cox Medical Center has assumed and held itself out as having voting control of more than 10% of Ozark's stock.
Defendant M. J. Coen is president of defendant Midland Securities Co., Inc., a corporation of Kansas City, Missouri.
During August and September of 1970, defendants Lester L. Cox, John K. Hulston, Raymond M. Dunn, M. J. Coen and *1116 Albert W. Thomson, Clarence Tabor, Midland Securities Co., Inc., Sunland Development, Inc., Edwin B. Wright, held a series of meetings at which they formulated a plan to take control of Ozark. As a result of such meetings, an agreement ("The Cox-Midland Agreement") was reached among the members of the group that defendants Midland Securities Co., Inc., Sunland Development, Inc., Coen, Wright and Thomson would acquire an additional 500,000 shares of Ozark's common stock and that those shares, together with the shares held by the Cox Center would provide a basis for the election of a majority of Ozark's directors. This agreement is set forth in an exchange of letters between Cox Medical Center and Midland dated September 14, 1970 and September 16, 1970 (Plaintiff's Exhibits 3B and 3C).
In furtherance of such plan, defendant Hocker, ostensibly on his own behalf as the holder of 100 shares of Ozark's stock, made a series of demands on Ozark for shareholders' lists (Exhibits 1 (including 1a-1s)).
On September 24, 1970, the directors of the Cox Medical Center passed a resolution authorizing Chairman Lester Cox to instruct The Citizens Bank, as trustee and executor under the Will of Floyd W. Jones, to vote "all the shares of Ozark Air Lines common stock in which the Medical Center as legatee or beneficiary" in accordance with the Cox-Midland Agreement.
Subsequent to the formation of the Cox-Midland Agreement, the following individual defendants are known to have acquired the following shares:

 M. J. Coen 13,300
 Edwin B. Wright 2,000
 Lon O. Hocker 3,000
 Ray M. Dunn 2,000
 John K. Hulston 100

Defendant Midland Securities Co., Inc. purchased 49,104 shares. Midland controls First California Company, Incorporated, which purchased 1,400 shares. Defendant Sunland Development, Inc. purchased no shares pursuant to the Plan. Partners of The First Greystone Associates, a partnership apparently not disclosed to Cox Medical Center but represented by Midland in the Cox-Midland Agreement, individually purchased approximately 36,500 shares. A Schedule 13D filing was made April 5, 1971 on behalf of Midland, Sunland and First Greystone.
The existence of the Cox-Midland Agreement was disclosed to Ozark on March 5, 1971 when it received a copy of a Schedule 13D reporting the dissolution of the agreement and defendant's plan to acquire control of Ozark and indicating that it had no other contract arrangements or understandings with any persons concerning its holdings of Ozark's stock. At a meeting of the Ozark directors on March 12, 1971, the board, including defendants Cox and Tabor, unanimously approved the nomination of a slate of directors, consisting of the present directors and John K. Hulston, for election at the annual shareholders' meeting on May 21, 1971.
At a meeting of the directors of the Cox Medical Center held on March 18, 1971, it was agreed that the Cox Medical Center would solicit proxies in opposition to the nominees proposed by Ozark on March 12, 1971, and that defendants, Cox, Tabor, Hulston, Dunn and Hocker would contribute an aggregate of $10,000 in furtherance of such solicitation and the agreement's attempt to elect a majority of Ozark's board. On March 29, 1971, a copy of the March 18 resolution was filed with the Civil Aeronautics Board and received by Ozark.
On March 31, 1971, defendants Cox Medical Center, Cox, Tabor, Hulston, Hocker, Dunn, Caldara and Rautbord filed Schedule 14B's with the Securities and Exchange Commission, indicating their intention to solicit proxies in opposition to management and in furtherance of the March 18, 1970 resolution.
Ozark sustained operating losses of approximately $409,000 in 1967, $699,500 in 1968, $3,992,000 in 1969 and $2,270,663 in 1970. These losses have depleted Ozark's cash position.
*1117 Ozark's presently outstanding financial indebtedness in the amount of $32,187,500.00 in principal amount is secured by chattel mortgages on all the flight equipment owned by Ozark. Ozark is now, and for some time has been, unable to comply with certain covenants under its Credit Agreement and to make principal payments on such indebtedness when due. Ozark has obtained from its lenders a waiver of Ozark's failure to comply with the covenants of the Credit Agreement, which waiver expires on May 13, 1971. Ozark will not be in a position to fully comply with the covenants of the Credit Agreement on May 31, 1971, or for some time thereafter.

CONCLUSIONS OF LAW
This Court has jurisdiction of this action under Section 27 of the Securities and Exchange Act of 1934, and venue is properly placed in this District.
Section 13(d) of the Securities and Exchange Act, incorporated in the Act in 1968 as a part of amendments known as the Williams Act, provides in pertinent part as follows:
"13(d) (1). Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 12 of this title * * *, is directly or indirectly the beneficial owner of more than 10 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing such of the following information, and such additional information, as the Commission may by rules and regulations prescribe * * *.
(2) If any material change occurs in the facts set forth in the statements to the issuer and the exchange, and in the statement filed with the Commission, an amendment shall be transmitted to the issuer and the exchange and shall be filed with the Commission, in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
(3) When two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a "person" for the purposes of this subsection.
* * * * * *
(5) The provisions of this subsection shall not apply to
* * * * * *
(B) any acquisition of the beneficial ownership of a security which, together with all other acquisitions by the same person of securities of the same class during the preceding twelve months, does not exceed 2 per centum of that class, * * *."
Section 13(d) contemplate the filing of reports by a "person" who, by reason of acquisitions of shares of the issuer (Ozark) have beneficial interest in excess of 10% (now 5%) of a class of issuer.
Plaintiff contends that the death of Jones in February, 1969 and the probating of his Will caused Cox Medical Center technically to acquire a beneficial interest in excess of 10%. Defendants vigorously deny this conclusion. However, it is not necessary to determine whether there was in fact a technical violation under the Act in failing to file in this regard. The inheritance by the trust, and beneficial interest under the residuary clause of the will, is not such an "acquisition" as the section is designed to include. This subsection of the act clearly is designed to regulate filings regarding purposeful acquisitions, holdings or disposals which have the effect of changing or influencing the control of the issuer or affecting the market. The Cox Medical Center became a holder without motive or purpose by inheritance of a beneficial interest, and a filing under Subsection d(1) on that basis does *1118 not advance the purposes of the act because it is irrelevant to the maintenance of fair and honest markets. Indeed, information to be furnished in a 13(d) filing expressly relates to purchases, as distinguished from the kind of interest acquired by Cox Medical Center. 13(d) (1) (A), (B), (C). An injunction against a proxy fight based on such a technical violation would serve no useful purpose, and has no relationship to equity. Cox Medical Center's interest in the Jones' estate and trust, a matter of record since February, 1969, and its compliance with CAB requirements, disclosing the provisions of the Jones' will and trust, were known to plaintiff since September 15, 1969. No irreparable harm from the failure of Cox Medical Center to make a 13(d) filing following Jones' death has been demonstrated. Even if this circumstance required a 13 (d) filing, which this Court holds it did not, no amendment would have been required upon the formation of the Cox-Midland group until the 2% exemption had been exceeded.
The activities culminating in the written agreements contained in the letters of September 14 and 15 (plaintiff's Exhibits 3B and 3C) are sufficient to constitute the participants a "group" within the meaning of 13(d) (3), which provides that a "group" as therein defined shall be deemed a "person" within the reporting requirements of Section 13 (d). The persons to be included in that group are defendants Cox Medical Center, Midland Securities, Sunland Development, Cox, Tabor, Hulston, Dunn, Wright and Thomson; and together they owned more than 10% of the class on September 16, 1970.
For purposes of considering the quantum of shares represented by the Cox-Midland group at the time of formation of their agreement, the court has applied the test of control of Bath Industries, Inc. v. Blot, 427 F.2d 97, 112 (7th Cir., 1970) and concludes that on September 16, 1970 Cox Medical Center had a beneficial interest in the Jones Estate and Trust shares which must be included in the initial number of shares beneficially owned by the group. This, however, is insufficient to invoke the reporting requirements, which are not triggered by the mere formation of a group having the 10% interest in the aggregate, with a view to gaining control, absent further acquisitions by the group.
The Court relies upon and adopts the cogent legal analysis of 13(d) supplied by Judge Milton Pollock in GAF Corp. v. Milstein, 324 F.Supp. 1062 (S.D.N.Y., 1971).
Section 13(d) (5) (B) exempts absolutely from the reporting requirements acquisitions which, with all other acquisitions by the same person (here the Group) during previous 12 months, do not exceed 2% of that class. Taking the shares acquired within the two year period, it does not appear from the evidence adduced that the Cox-Midland Group has exceeded its exemption, and the plaintiff has therefore failed to prove a violation of 13(d) by the Cox-Medical Group.
The Cox-Midland Group was aborted by its own terms on February 28, 1971, and there has been no showing that any subsequent person or group having more than five per cent of the outstanding shares of common stock of Ozark has subsequently acquired additional shares in excess of the 2% exemption.
Testimony was offered to substantiate plaintiff's contention that members of the Cox-Midland Group concealed their purpose from management in a manner suggestive of bad faith. No misrepresentations were established to the satisfaction of the Court, and the Court will not punish non-disclosure where the law does not require it. As Judge Pollock observed in GAF supra, "the Williams Bill concentrated on an investor protection goal rather than on providing protection for management's ability to repel raiders." 95 SRLR D-4.
Assuming that upon a full hearing on the merits plaintiff may be able to establish that a violation of Section 13(d) did occur as alleged in the complaint, and further that the March 5, 1971 filing by defendant Cox Medical Center was not a sufficient curative, or *1119 was inaccurate or incomplete, or that there were subsequent changes between March 5, 1971 and the filing of the complaint on April 1, 1971 which required such defendant to file appropriate amendments, there must still be established by persuasive evidence the irreparable harm to plaintiff which is a condition precedent to injunctive relief. The Court has not been persuaded that the plaintiff has met its burden or is likely to prevail on the merits with respect to its prayer for an injunctive remedy.
In support of its allegation of irreparable harm, plaintiff asserts (1) that its lenders may not continue to waive certain events of default after May 31, 1971 if an expensive proxy fight is precipitated or there is a change in management, and (2) the cost to management of campaigning for the re-election of incumbent directors at the annual meeting of shareholders May 21, 1971 may exceed $200,000. Neither of these anticipated injuries has been shown to result from any wrongful act or omission of defendants. The Court found the proof speculative and inconclusive.
The evidence adduced by plaintiff and defendants alike establishes a steady deterioration of the assets of Ozark through operating losses in excess of federal subsidies. Ozark is in default on its loan agreement in several material respects, and there has been no showing that the lenders continue to grant waivers solely because of their confidence in the present ownership of shares and the present complexion of the board of directors. Perhaps they have no practical alternative. Perhaps they would welcome constructive change. That is not for the Court to say or to assume; suffice it to say that plaintiff has not persuaded the Court that any dire results would occur with respect to the existing debt if defendants are permitted to solicit proxies to effect a change in management. This potential cannot be equated to the loss of a hoped for contract, which supported the injunction in Bath Industries, supra. If there is any finger pointing to be done here, it would appear to the Court that incumbent management must accept responsibility rather than these defendants for the condition which imperils Ozark's relationship with its lenders, if such danger in fact exists. An injunction at this time affecting the right of the shareholders to pass upon the performance of their management and determine for themselves who will lead the corporation out of its present difficulties, seems particularly inappropriate.
The second allegation of injury, the expense of waging a proxy fight on behalf of management's slate of directors, is likewise not the kind of irreparable harm which would justify injunctive relief. The evidence of cost was speculative, and the assumptions which produced this estimate were not known to the witness (Grace) or disclosed in any manner to the Court. It was not shown that this amount would have been any less had defendants filed 13(d) reports at any earlier time. In short, plaintiff argues that it can save this money, if the Court prevents defendants from seeking to elect directors of their choice at the annual meeting. We do not deal with a special meeting presumably called at the propitious tactical moment, as was the case in Bath, but with a regularly scheduled annual meeting of Ozark's shareholders at which directors are regularly elected. The extra cost would be to defeat the competition, and we do not believe this Court should insulate the incumbent directors from the elective process merely to avoid such expenses. Management must account to its shareholders for its stewardship, including the amount of funds expended to perpetuate the incumbents in office.
As pointed out with great clarity by Judge Pollack in GAF, supra, the Williams Act was designed to protect the investing public against the impact upon the market of undisclosed take-over activities by means of acquisitions in excess of the exempt 2% amount. Section 14 of the Securities and Exchange Act of 1934 provides the methods of disclosure in the case of take-over activities by means of proxy solicitation. Had there been no 13(d) filing before this litigation *1120 commenced, and had there been evidence of acquisitions in excess of the 2% exemption, this Court might have considered as an appropriate remedy disenfranchising all shares acquired by the Group in excess of the 2% exemption in violation of the Williams Act. Here there is no showing that such acquisitions occurred in sufficient amounts to exceed the exemption, and the representations of defendant Hocker as attorney for defendants are to the contrary. Perhaps a full hearing on the merits will disclose such acquisitions, but at this stage of the proceedings the Court does not find that plaintiff is likely to prevail on this point. Rather, we find that to preserve the status quo by injunctive relief pending a full hearing on the merits would not only fail to balance the hardships between the parties, but would impose a restriction upon the shareholders and the investing public wholly unwarranted by the present record.
It is, therefore, ordered that plaintiff's application for relief in the nature of a preliminary injunction is denied. The case will be set for full hearing on the merits upon application.
NOTES
[1] At plaintiff's request the evidence was heard on the preliminary injunction only and was not consolidated with the trial on the merits. It was stipulated that all evidence adduced would be considered as evidence in a companion case: Lester E. Cox Medical Center, et al. v. Thomas L. Grace, et al., No. 71 C 205(3). Plaintiff's Exhibit 13 was filed by leave April 14, 1971.