GENERAL AIRCRAFT CORPORATION,
Plaintiff-Appellee,

v.

Irwin S. LAMPERT et al.,
Defendants-Appellants.

No. 76–1452.

United States Court of Appeals,
First Circuit.

Argued Nov. 5, 1976.

Decided May 26, 1977.

Irwin Lampert, New York City, with whom Lampert & Schneider, P.C., Eugene Wallman, New York City, and Gabriel Robert Caggiano, Boston, Mass., were on brief, for defendants-appellants.

Theodore E. Dinsmoor, with whom Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and GIGNOUX,* District Judge.

GIGNOUX, District Judge.

This is an appeal from an order of the District Court granting a preliminary injunction against appellants for failure to comply with the disclosure provisions of Section 13(d) of the Securities Exchange Act of 1934 (the 1934 Act), 48 Stat. 894, as added by Section 2 of the Williams Act, 82 Stat. 454, as amended, 84 Stat. 1497, 15 U.S.C. § 78m(d) (1971).

I.

Appellee, General Aircraft Corporation (GAC), is a publicly-held corporation primarily engaged in the manufacture and sale of a type of short take-off and landing light aircraft known generally in the aviation industry as "STOL". Its principal place of business is located in Bedford, Massachusetts. As of March 31, 1976, GAC had 1,243,742 shares of common stock outstanding. The shares of GAC common stock are held of record by approximately 3,000 stockholders and are registered under Section 12 of the 1934 Act, 15 U.S.C. § 78*l*.

* Of the District of Maine, sitting by designation.

On October 30, 1974, the three individual appellants, Irwin S. Lampert, Leonard Levy and Paul Scuderi, purchased a total of 150,485 shares of GAC common stock. Levy acquired 75,485 shares, Lampert and Scuderi 37,500 shares each. Lampert's and Scuderi's shares were all held in Lampert's name. These acquisitions constituted more than 12% of GAC's outstanding common shares. Appellants were therefore required to comply with the disclosure provisions of Section 13(d) of the Williams Act and its implementing regulations by filing a Schedule 13D with GAC and the Securities and Exchange Commission within ten days.[1] Appellants did not, however, file a Schedule 13D. On December 31, 1974, Lampert and Scuderi each acquired an additional 2800 shares of GAC common stock. Appellants still, however, did not file a Schedule 13D

within ten days of these acquisitions. Finally, on January 31, 1975, Lampert filed a Schedule 13D on behalf of all three appellants. The Schedule 13D thus filed stated "the purpose of the transaction was for investment purposes and not to acquire control of the business of the issuer."

For the next year and a half appellants clashed with GAC's management. By letter dated April 29, 1975, Lampert proposed the enlargement of GAC's Board of Directors from five to seven members, the inclusion of Lampert, Levy and a designee of Levy's on the Board, the retirement of the then Chairman and Chief Executive Officer, and other changes in GAC's corporate structure and business. Appellants next threatened to solicit proxies in opposition to management's nominees for election

1. Section 13(d) as amended provides in relevant part:

(d)(1) Any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 78*l* of this title, or any equity security of an insurance company which would have been required to be so registered except for the exemption contained in section 78*l*(g)(2)(G) of this title, or any equity security issued by a closed-end investment company registered under the Investment Company Act of 1940, is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing such of the following information, and such additional information, as the Commission may by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors—

(A) the background and identity of all persons by whom or on whose behalf the purchases have been or are to be effected;

(B) the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the purchase price or proposed purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of the transaction and the names of the parties thereto, except that where a source of funds is a loan made in the ordinary course of business by a bank, as defined in section 78c(a)(6) of this title, if the person filing such statement so requests, the name of the bank shall not be made available to the public;

(C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;

(D) the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the name and address of each such associate; and

(E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof. 82 Stat. 454, as amended, 15 U.S.C. § 78m(d).

Rule 13d–1 of the Securities and Exchange Commission provides that the disclosure required by Section 13(d)(1) be set forth in a Schedule 13D. *See* 17 C.F.R. §§ 240.13d–1, 240.13d–101 (1976). The SEC has recently expanded the disclosure requirements of Section 13(d) but the amendments in no way affect the disposition of this case. 45 U.S.L.W. 2420 (Feb. 24, 1977).

as directors at the 1975 annual stockholders meeting. To avoid a proxy contest, GAC's management agreed to enlarge the Board of Directors from five to seven members and to recommend the election of Lampert and Levy as directors. On July 1, 1975, at the annual stockholders meeting, Lampert and Levy's nominees were elected directors along with five management representatives. Thereafter, appellants continued to propose drastic changes regarding the business and corporate structure of GAC, including the exploration of merger possibilities and the sale of the company's assets. In early 1976 appellants began to enlist prospective nominees for a dissident slate of directors to be proposed at the 1976 annual stockholders meeting. In April 1976 Lampert requested GAC's stockholders list for the purpose of soliciting proxies to elect representatives to the Board of Directors. On May 13, 1976, faced with the threat of a proxy contest to oust management at the 1976 annual stockholders meeting to be held in July, GAC filed a complaint in the United States District Court for the District of Massachusetts charging, inter alia,[2] that appellants had violated Section 13(d) of the Williams Act first by failing to file the required Schedule 13D and then by filing a false one. GAC also filed a motion for a preliminary injunction pending a full hearing on the merits.

On June 16, 1976 the District Court held a hearing on GAC's motion for a preliminary injunction. After consideration of the verified complaint and answer, and various affidavits and depositions submitted by GAC in support of its motion, the court concluded that (1) in acquiring more than five percent of GAC's common stock on October 30, 1974, appellants acted as a "group" within the meaning of Section 13(d)(3)[3] and hence were required to file a Schedule 13D within ten days thereafter; (2) appellants violated Section 13(d) by not filing a timely Schedule 13D; and (3) appellants further violated Section 13(d) by filing an inaccurate and misleading Schedule 13D stating that the acquisition of the shares was for the purpose of investment only and not for the purpose of acquiring control. Finding that it was likely that GAC would prevail on the merits and that "investing persons who hold shares in [GAC] and potential shareholders," though not necessarily the corporation itself, had demonstrated irreparable harm, the court determined that a preliminary injunction should issue. After separately considering the scope of relief at a second hearing on August 26, 1976, the court issued a preliminary injunction enjoining appellants from: (1) further violating Section 13(d); (2) failing to amend the inaccurate Schedule 13D filed January 31, 1975; (3) acquiring further shares of GAC common stock or soliciting proxies or consents from GAC stockholders until their Schedule 13D was amended to reflect their intentions with respect to control of GAC's Board of Directors and changes in its business and corporate structure; and (4) voting any GAC stock or proxies or consents at the 1976 annual meeting of stockholders. The preliminary injunction was conditioned upon GAC furnishing a bond in the amount of $10,000 for the payment of costs and damages incurred by any party found to have been wrongfully enjoined.

■ On this appeal appellants challenge the District Court's finding that their activities violated Section 13(d) and contend that the court erred in granting the preliminary injunction.[4] After a careful scrutiny of the

---

2. The complaint also alleged that appellants had violated other provisions of the federal securities laws. These claims were not ruled on by the District Court and are not now before us.

3. See Part III, infra.

4. We find insufficient support in the record to warrant extended discussion of appellants' further claim that GAC's suit is barred by laches and "unclean hands." There is no evidence whatsoever to support the assertion of "unclean hands," nor can it be said that GAC failed to act in a timely manner by filing suit within six weeks after Lampert demanded GAC's stockholder list and specifically advised GAC management of appellants' intention to nominate their own slate of directors for election at the July 1976 annual stockholders meeting.

record, we are satisfied that the findings of the District Court and the order issuing the preliminary injunction were proper in all respects save one—appellants should not have been enjoined from voting their own legally acquired shares of GAC common stock at the 1976 annual meeting of stockholders.[5]

## II.

■ Before considering the claims of errors separately, a brief review of the history and purposes of the Williams Act, and particularly of Section 13(d), is appropriate. The Williams Act was the legislative response to a gap in the federal securities laws which permitted cash tender offers and other acquisitions resulting in shifts of corporate control to occur without adequate disclosure of information to investors. H.R. Rep. No. 1711, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, pp. 2811, 2812–14. Although the rush of tender offers in the 1960s received the greatest Congressional attention, the Williams Act covers a broader range of possible shifts in control:

> The Bill before you deals with stock acquisitions in three specific contexts—first, the acquisition by means of a cash tender offer of more than [5 percent] of any class of stock of a publicly held company; second, other acquisitions by any person or group of more than [5 percent] of any class of stock of a publicly held company; and third, the repurchase by a corporation of its own outstanding shares.

S.Rep. No. 550, 90th Cong., 1st Sess. 16, 33 (1967) (remarks of then Chairman Cohen). Section 13(d) is concerned with the second

type of stock acquisition, requiring after-the-fact disclosure of substantial open market accumulations of securities within a relatively short period of time. H.R.Rep. No. 1711, 1968 U.S.Code Cong. & Admin.News at 2818. Essentially, Section 13(d) requires any person, or group of persons, after acquiring more than five percent of a class of registered equity securities, to send to the issuer and the exchanges on which the securities are traded and file with the Commission the statement required by the Act, disclosing, among other things, the identity of the persons filing, the number of shares owned by them, the source of the funds used to purchase the shares, and the purpose of the purchase.[6] Although such disclosure may greatly affect the internal distribution of corporate power, Congress was careful to avoid tipping the balance of federal regulation in favor of either management or those attempting a change in corporate control; the balance was struck in favor of allowing investors to be informed of *potential* changes in corporate control and permitting the market to value the shares accordingly. *See generally* Note, Section 13(d) and Disclosure of Corporate Equity Ownership, 119 U.Pa.L.Rev. 853 (1971); James J. Moylan, Exploring the Tender Offer Provisions of the Federal Securities Laws, 43 Geo.Wash.L.Rev. 551, 558–59 (1975). As the Supreme Court has recently had occasion to observe in *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58–59, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975):

> The purpose of the Williams Act is to insure that public shareholders who are confronted with a cash tender offer for their stock will not be required to respond without adequate information regarding

---

**5.** Neither the availability of a private suit under Section 13(d) nor GAC's standing to bring such a suit are challenged by appellants. *See Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 62, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *GAF Corp. v. Milstein,* 453 F.2d 709, 719–21 (2d Cir. 1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972); *cf. Piper v. Chris-Craft Industries,* 430 U.S. 1, 42 n.28, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977) (tender offeror does not have implied cause of action for damages for violation of Section 14(e) of the Williams

Act, but no opinion is expressed on the standing of an issuer to enforce the Act).

**6.** Section 14(d) of the Williams Act, 15 U.S.C. § 78n(d), concerns the first type of stock acquisitions, the acquisition of stock by means of a cash tender offer. In substance, it requires that disclosure of similar information to that required by Section 13(d) must be made *prior to* the making of a tender offer. Commission Rule 14d–1 requires that the Section 14(d) disclosure also be made in a Schedule 13D. *See* 17 C.F.R. § 240.14d–1 (1976).

the qualifications and intentions of the offering party. By requiring disclosure of information to the target corporation as well as the Securities and Exchange Commission, Congress intended to do no more than give incumbent management an opportunity to express and explain its position. The Congress expressly disclaimed an intention to provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts. Indeed, the Act's draftsmen commented upon the "extreme care" which was taken "to avoid tipping the balance of regulation either in favor of management or in favor of the person making the takeover bid." S.Rep. No. 550, 90th Cong., 1st Sess., 3 (1967); H.R. Rep. No. 1711, 90th Cong., 2d Sess., 5 (1968). See also *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 947 (CA2 1969) (footnote omitted). *Rondeau* thus makes clear that the Williams Act was not intended to be used by management to draw the federal courts into factional intracorporate disputes, so long as the interests of all investors are adequately protected.

### III.

■ Appellants' attack upon the District Court's finding of a Section 13(d) violation need not detain us long. We find no error in the court's conclusion that at the time they first acquired 12 percent of GAC's common stock on October 30, 1974, the three individual appellants acted as a "group" within the meaning of Section

13(d)(3) and were therefore subject to the reporting requirements of the Act. Section 13(d)(3) provides that "[w]hen two or more persons act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer, such syndicate or group shall be deemed a 'person' for the purposes of [Section 13(d)]." 15 U.S.C. § 78m(d)(3). The evidence upon which the District Court predicated its finding included: the 150,485 shares of GAC common stock were acquired simultaneously in identical transactions (except for amount) by all three appellants; Scuderi's shares were held in Lampert's name from the time of purchase; a single Schedule 13D was filed on behalf of all three appellants and signed by all three; copies of correspondence with GAC from any one appellant were sent to the others. On this record, the District Court could not have concluded other than that the three appellants constituted a "group" and thus, as a "person," were subject to the provisions of Section 13(d).[7] This finding, of course, merely requires that the statutory disclosure obligation be determined by reference to the group holdings rather than individual ownership.[8] As noted earlier, there is no dispute that the Schedule 13D was filed approximately three months after the date required by statute.

■ We also conclude that the District Court did not err in finding, for purposes of preliminary relief, that appellants' Schedule 13D was inaccurate and misleading in stating that the purchase of shares was for the purpose of investment rather than acquisi-

---

7. No difficulty is presented on this record, insofar as preliminary relief is concerned, as to *when* appellants agreed to act in concert and thus became a "group," since it is clear that their October 30, 1974 purchase of GAC shares was pursuant to their prior agreement to act in concert to acquire the stock. It is therefore unnecessary for us to determine whether the filing requirement of Section 13(d) is triggered when two or more persons owning more than five percent of a class of securities agree to act in concert to seize control or whether filing is required only when the group, in addition, has agreed to acquire more shares thereafter. *Compare GAF Corp. v. Milstein,* 453 F.2d 709,

715–19 (2d Cir. 1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972) *with Bath Industries v. Blot,* 427 F.2d 97 (7th Cir. 1970).

8. Even if it were to be determined that appellants did not act as a group, Levy alone was required to file a Schedule 13D within ten days after October 30, 1974, since he individually acquired 75,485 shares, which constituted approximately six percent of GAC's common stock. As Lampert held Scuderi's shares in addition to his own, it would appear that he was also required to file a Schedule 13D.

tion of control. The word "control," though not defined in the statute, is given a broad definition in the regulations:

> The term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise. 17 C.F.R. § 12b–2(f), *made applicable to Schedule 13D filings by 17 C.F.R. § 240.-12b–1.*

*See Graphic Sciences v. International Mogul Mines,* 397 F.Supp. 112, 124–25 (D.D.C. 1974). The activities of appellants detailed above amply support the District Court's conclusion that appellants' purpose in acquiring the GAC shares was to acquire "the power to direct or cause the direction of the management and policies" of GAC. The Schedule 13D was therefore inaccurate and misleading as of the date it was filed. *Compare Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973) *with Susquehanna Corp. v. Pan American Sulphur Co.,* 423 F.2d 1075 (5th Cir. 1970).[9]

We affirm the District Court's finding that appellants violated Section 13(d) by failing to file a timely Schedule 13D and then by filing a false one.

## IV.

■ Having determined that the District Court did not err in finding a Section 13(d)

violation, we reach the separate and distinct question of appropriate relief. We are guided by the recent Supreme Court decision in *Rondeau v. Mosinee Paper Corp., supra* at 64–65, 95 S.Ct. at 2079:

> *Mills [v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)] could not be plainer in holding that the questions of liability and relief are separate in private actions under the securities laws, and that the latter is to be determined according to traditional principles. Thus, the fact that respondent is pursuing a course of action which has been generally recognized to serve the public interest *provides no basis for concluding that it is relieved of showing irreparable harm and other usual prerequisites for injunctive relief.* (emphasis supplied)

In *Rondeau,* the Supreme Court explicitly rejected the argument that a violation of the Williams Act, without more, justifies the issuance of an injunction; in accordance with traditional equitable principles a showing of irreparable harm must be made. *Id.* at 60–65, 95 S.Ct. 2069.

■ The only irreparable harm alleged by GAC in its complaint is the failure to receive information mandated by Section 13(d).[10] The District Court found that "not necessarily the plaintiff corporation but the investing persons who hold shares in that corporation and potential shareholders in that corporation" had demonstrated irreparable harm sufficient to warrant the issuance of a preliminary injunction. As the

---

**9.** Although Section 13(d), unlike Section 14(e), does not in terms prohibit a false filing, we agree with the Second Circuit that the obligation to file *truthful* statements is implicit in the obligation to file. *See GAF v. Milstein, supra* at 720. Moreover, even if appellants' intent to acquire control of GAC did not arise until after January 31, 1975, appellants are still in violation of their duty to amend the Schedule 13D pursuant to Section 13(d)(2), 15 U.S.C. § 78m(d)(2), and its implementing regulation, 17 C.F.R. § 240.13d–2.

**10.** Paragraph 32 of the complaint provides in full:

> The foregoing violation of Section 13(d) of the 1934 Act render all purchases and at-

tempts to purchase G.A.C. common stock illegal and voidable. These violations have deprived plaintiff and its shareholders of the opportunity to learn, inter alia, the identity of the persons proposed by defendants to be the new or additional G.A.C. directors and officers, as well as other material changes in G.A.C.'s business, which defendants intend to implement. Therefore, unless defendants are restrained *they will continue to cause plaintiff and its shareholders to be deprived of information deemed essential by the 1934 Act, to their irreparable harm.* (emphasis supplied)

very *raison d'etre* of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information, we discover no error in the decision that irreparable injury would occur to shareholders and the investing public if appellants were allowed to continue their activities without correcting and amplifying their Schedule 13D. We therefore affirm the order granting the preliminary injunction insofar as it enjoined appellants from further violations of Section 13(d), from failing to amend their inaccurate Schedule 13D, and from acquiring further shares of GAC common stock or soliciting proxies or consents from GAC stockholders until the Schedule 13D is amended to reflect accurately their intentions. *See Bath Industries v. Blot,* 427 F.2d 97, 113 (7th Cir. 1970); *Graphic Sciences v. International Mogul Mines, supra* at 128; *Jewelcor v. Pearlman,* 397 F.Supp. 221, 253 (S.D.N.Y.1975); *cf. Corenco Corp. v. Schiavone & Sons,* 488 F.2d 207, 214–15 (2d Cir. 1973.)

We are disturbed, however, by the conclusion that irreparable harm would result if appellants were not enjoined from voting their stock at the 1976 GAC annual stockholders meeting.[11] We are unable to discern that failure to enjoin appellants from voting their stock at the annual meeting would have resulted in irreparable injury to either of the two groups singled out by the trial court—existing GAC shareholders and potential shareholders. Investors who bought or sold GAC stock at an unfair price or in reliance upon the inaccurate Schedule 13D have an adequate remedy at law by way of an action for damages, thereby negating their entitlement to equitable relief. *Rondeau, supra* at 60, 95 S.Ct. 2069.[12] Simi-

larly, absent an imminent contest for control, the fact that existing stockholders retained the benefit of their stock made the possibility of damage to them remote at best. ·*Idem. See Missouri Portland Cement Co. v. H. K. Porter Co.,* 535 F.2d 388, 398–99 (8th Cir. 1976). Although a proxy contest had been threatened prior to the 1976 annual meeting, enjoining appellants from acquiring additional GAC stock or from soliciting proxies or consents prior to amendment of their Schedule 13D adequately protected both continuing stockholders and potential investors from any possible harm.

■ Flexibility rather than rigidity has distinguished equity practice over the years, and "[t]he historic injunctive process was designed to deter, not to punish." *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944), quoted with approval in *Rondeau, supra* at 61, 95 S.Ct. ·2069. Appellants' stock was acquired legally more than a year prior to the filing of the present action. Investors are entitled to the legitimate fruits of their investment. *Graphic Sciences v. International Mogul Mines, supra* at 128. In the circumstances disclosed by this record, sterilization of appellants' legally acquired shares would be punishment, not deterrence, since it would deprive appellants of previously acquired voting rights without sound reason. While it may be appropriate for the courts to enjoin the voting of shares rapidly acquired just before a contest for control following a Section 13(d) violation, *see Rondeau, supra* at 59, n.9, 95 S.Ct. 2069, absent a clear showing of irreparable injury, disenfranchisement should not extend to prior holdings legally acquired. *See Jewelcor v. Pearlman, supra* at 252–53; *Graphic Sci-*

---

11. Although the annual meeting of stockholders was held on November 19, 1976, having been twice postponed and rescheduled a third time for lack of a quorum, we do not believe the question to be moot. The granting of the preliminary injunction was conditioned upon GAC posting a bond in the amount of $10,000 to reimburse any party found to have been wrongfully enjoined. *See* Fed.R.Civ.P. 65(c). If appellants were wrongfully disenfranchised, they may still recover any damages resulting

from being unable to vote at the 1976 annual meeting.

12. Thus, for example, the persons who sold the 5600 shares of GAC stock to Lampert and Scuderi on December 31, 1974, while appellants were in violation of Section 13(d) for failure to file the required Schedule 13D, have an adequate remedy at law for damages if they sold their stock at an unfair price as a result of the Section 13(d) violation. *Idem.*

ences v. *International Mogul Mines, supra* at 128–29; *Committee for New Management of Butler Aviation v. Widmark,* 335 F.Supp. 146, 155 (E.D.N.Y.1971); *Ozark Airlines v. Cox,* 326 F.Supp. 1113, 1119–20 (E.D.Mo.1971). *Cf. Missouri Portland Cement Co. v. H. K. Porter Co., supra* at 399–400 (Section 14(d) and (e) violations); *Electronic Specialty Co. v. International Controls Corp.,* 409 F.2d 937, 947–48 (2d Cir. 1969) (Section 14(d) and (e) violations); *Chris-Craft Industries v. Piper Aircraft Corp.,* 480 F.2d 341, 380 (2d Cir.), *cert. denied,* 414 U.S. 910, 94 S.Ct. 231, 38 L.Ed.2d 148 (1973) (five-year injunction against voting only those shares *illegally* obtained through cash purchases after Section 14(e) violation), *appeal after remand,* 516 F.2d 172, 192–94 (2d Cir. 1975), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). *But see Twin Fair v. Reger,* 394 F.Supp. 156, 161 (W.D.N.Y. 1975); *Water & Wall Associates v. American Consumer Industries,* CCH Fed.Sec.L. Rep. [1973 Decisions] ¶ 93,943 at 93,759–60 (D.N.J.1973).

We conclude that GAC has failed to show such irreparable injury as would support disenfranchisement of appellants' legally acquired shares. We therefore hold that the District Court abused its discretion by enjoining appellants from voting their stock at the GAC 1976 annual meeting of stockholders.

*Affirmed in part; reversed in part; and remanded for proceedings consistent with this opinion.*