**MORRISON KNUDSEN CORPORATION,**
Plaintiff,

v.

**Edward F. HEIL, Defendant.**

**Civ. No. 88–1232.**

United States District Court,
D. Idaho.

Nov. 18, 1988.

**498**

Jack T. Hawley, Edwin V. Apel, Jr., Wayne B. Slaughter, Jr., Hawley Troxell Ennis & Hawley, Boise, Idaho, Richard M. Breslow, Douglas Kraus, Skadden Arps Slate Meagher & Flom, New York City, for plaintiff.

Carl Burke, Kaye L. O'Riordan, Peter C.K. Marshall, Elam Burke & Boyd, Boise, Idaho, Thomas W. McNamara, Bruce G. Wilson, Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

CALLISTER, District Judge.

The Court has before it plaintiff's motion for preliminary injunction and defendant's motion to dismiss. The Court heard evidence and argument on October 12 and 13, 1988, and requested proposed findings of fact and conclusions of law. The parties have now submitted their proposals and the matter is ready to be resolved. This written memorandum decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

Defendant Edward Heil purchased more than five percent of the stock of plaintiff Morrison Knudsen Corporation (M–K) and filed an informational statement—known as a Schedule 13D statement—with the Securities and Exchange Commission (SEC). In response, M–K brought this lawsuit claiming that Heil's 13D statement was misleading and in need of correction. To determine the veracity of the 13D statement, the Court must first examine the facts leading up to M–K's challenge.

Defendant Edward Heil is presently engaged in the heavy construction industry as chief executive officer of American Enterprise Construction Co. In 1986 he sold another business he owned, receiving substantial funds which he intended to use for investment purposes. According to Heil's testimony at the evidentiary hearing, which the Court finds credible, Heil drew on his long experience in the construction industry to predict that the heavy construction business was rebounding and would prosper. He felt that M–K would benefit from this industry-wide resurgence, and felt that its stock was undervalued. Heil decided not to spread his investments around, but rather was more comfortable concentrating solely on M–K stock.

Heil started purchasing M–K shares on May 12, 1988, and after two weeks had spent $7 million to acquire 189,500 shares. He purchased very few shares from May 31, 1988, through June 13, 1988. Between June 20 and 23, 1988, he bought 54,300 shares for $2.2 million. Then on June 24, 1988, M–K declared an $85 million loss. Just prior to the announcement, the stock was selling at about $41.00 per share; after the announcement the price dropped to about $38.00 per share. Heil gave his

stockbroker, Mark Ostroff, instructions to buy all the stock he could below $39.00 per share, later raising the ceiling to $40.00 per share. By the end of June 24, 1988, Heil had purchased 342,700 shares for more than $13 million. With this purchase, he now owned more than five percent of M–K stock and was required to file the 13D statement with the SEC.

At this point, Ostroff suggested to Heil that they meet with Robert Berner, from Morgan Stanley's Investment Banking Division, who could advise Heil on the requirements of the 13D statement. A meeting was held on June 28, 1988, between Heil, two of Heil's attorneys, and four representatives of Morgan Stanley. The Morgan Stanley representatives discussed how Heil could seek to have some control over M–K; options such as representation on the board of directors, tender offers, and proxy contests were discussed. Heil stated that he would like to put two representatives on the M–K board and questioned whether his shares might automatically entitle him or his representatives to such a position. He was informed that he had no such automatic entitlement. He then noted that perhaps someday he would like representation on the board of directors, and mentioned the name of a Mr. Allen Goldboro, the chairman of a real estate development company, as someone Heil thought would be "helpful to a board [of directors] like M–K." *See* Transcript of hearing held October 12, 1908 at p. 127, lines 23–25. Heil also expressed dissatisfaction with the way M–K was selling off its real estate at "fire sale" prices and indicated that he would "take a different tack." *See* Deposition of Horn at pp. 84–86, 145–144.

This luncheon took place at a restaurant partially owned by Heil. During the luncheon Heil was continually getting up to greet patrons or talk with friends. *See* Transcript of October 12, 1988, hearing at p. 130. The participants at the luncheon meeting remember his participation as "erratic." *See* Deposition of Horn at p. 146. It appears to the Court that Heil's statements concerning representation on the board of directors made at that luncheon were off-the-cuff comments reflecting nothing more than vague ideas Heil held about M–K. Heil's stockbroker and other participants at the luncheon testified in their depositions that Heil never did have any consistent plan or strategy. *See* Depositions of Horn at pp. 84, 95; Berner at p. 53. Heil's stockbroker testified that Heil's main purpose for the investment was to make money. Heil's own testimony at the evidentiary hearing, which the Court finds most credible, is that he was considering representation on the board of directors, but had no specific plan or desire to go any further than simply consider the matter.

On July 1, 1988, three days after the luncheon, Heil filed his 13D statement announcing that he had purchased 6.2 percent of M–K's common stock for about $25 million. The 13D statement indicated that Heil had purchased the stock "for purposes of investment" and had "no definite plans for the acquisition of any additional securities ... although consideration had been given to the acquisition of additional securities on the open market." The 13D statement went on to divulge that:

> Edward F. Heil is considering whether to seek the election or appointment of one or more representatives to the board of directors of the issuer [M–K]. If Edward F. Heil seeks the election or appointment of representatives to the board of directors of the issuer, he may do so through either appointment of these persons by the current board of directors or through solicitation of proxies or consents.
>
> Through discussions with management of the issuer, possible representation on the board of directors of the issuer, or other means, Edward F. Heil desires to promote actions by the issuer to maximize value to shareholders.
>
> Except as noted above, Edward F. Heil has no current plans relating to or that would result in an extraordinary corporate transaction such as a merger, reorganization, or liquidation involving the issuer or any of its subsidiaries, a sale or transfer of a material amount of assets of the issuer or any of its subsidiaries, any change in the present board of di-

rectors or management of the issuer, or change in the number of term directors or filling any existing vacancies on the board of directors,....

In response to this 13D filing, M–K filed this lawsuit on July 5, 1988, charging that Heil failed to disclose in his 13D statement that he had been sued by the Illinois Attorney General who sought to bar Heil from doing any future business with the State of Illinois. M–K also alleged that Heil actually sought representation on M–K's board of directors and had failed to disclose that the Federal Trade Commission (FTC) was investigating a possible violation of the antitrust laws in connection with Heil's purchases.

One day after M–K filed this suit, Heil filed an amended 13D statement with the SEC. Heil amended his former statement that he was "considering" whether to seek representation on M–K's board of directors to state that he "has no current plans to seek the election or appointment of either himself or one or more representatives on the board of directors of the issuer or solicit proxies or consents." In addition, Heil added a paragraph in his amendment stating that he

> has never had, and does not currently have, any plans or intentions to participate in the formulation, determination, or direction, of the basic business decisions of the issuer.

In his amended 13D statement, like his original statement, Heil disclosed that he purchased the stock for "purposes of investment." Heil subsequently filed another amendment setting forth the FTC's investigation of the possible anti-trust violations.

On July 26, 1988, Heil filed a lawsuit against M–K in the United States District Court for the Northern District of Illinois seeking to declare invalid a "poison pill" amendment to M–K's Shareholder Rights Plan. This amendment would dilute Heil's equity interest if he had acquired more than ten percent of M–K's outstanding shares and was thereafter found to be an "adverse person" by M–K's board. That suit was dismissed by the district court. In seeking an expedited appeal, Heil indicated that he was interested in purchasing further shares of M–K. That appeal has now been submitted to the Seventh Circuit Court of Appeals for decision, but no decision has been rendered.

Thereafter, M–K filed a motion for preliminary injunction in this case and Heil filed a motion to dismiss. M–K's motion for preliminary injunction seeks to enjoin Heil from buying any M–K stock until he files a corrected 13D statement, and after a "cooling off" period has elapsed after that filing. M–K also seeks to require Heil to pay the cost of mailing the corrected 13D to shareholders. M–K argues that the present 13D statement is deficient for six reasons:

1. It fails to disclose that Heil desires to obtain representation on the M–K board, notwithstanding his claim that he has no "current" plans to seek such representation.

2. It fails to disclose that Heil may purchase additional M–K shares and has expressly reserved his right to do so in response to market movements. The amended Schedule 13D also fails to disclose that Heil believes that M–K stock is attractive at prices around $40.00 per share.

3. Although Heil's amended Schedule 13D claims that Heil "has never had, and does not currently have" any "plans or intentions" respecting M–K's "basic business decisions," it fails to disclose that Heil does indeed hold distinctive views about the direction of M–K's business—which he will plainly be in a position to influence if he achieves his goal of obtaining representation on the M–K board.

4. The amended Schedule 13D falsely claims that Heil acquired his M–K shares for "purposes of investment."

5. The amended Schedule 13D fails to disclose that Heil has commenced an action in federal court in Chicago seeking to invalidate M–K's shareholder rights plan and, in particular, a so-called "adverse person" amendment thereto, the provisions of

which, by their very terms, can only apply to persons owning ten percent or more of M–K's common stock.

6. The amended Schedule 13D fails to make full disclosure respecting the fraud action filed against Heil on June 16, 1988, by the Illinois Attorney General.

The first question of fact raised by M–K's allegations is whether Heil's statement that he had no current plans to seek representation on the M–K board is false. After reviewing the entire record, the Court finds Heil's statement truthful. Heil's testimony during the evidentiary hearing was believable and the Court gives it great weight. Heil testified that although he might "someday" want representation on the board, he had no current plan or strategy to seek representation. While he was considering representation on the board when he filed his original 13D statement—as revealed therein—he changed his mind when M–K filed this suit. Heil's lack of a plan or strategy concerning representation on the board is corroborated by testimony of Heil's stockbroker and the Morgan Stanley representatives who testified that Heil appeared to have no strategy. After examining all the evidence, the Court is most persuaded by Heil's own testimony that he has no current plans or strategy to seek representation on M–K's board of directors.

For similar reasons, the Court rejects M–K's allegation that Heil falsely stated that he "never had, and does not currently have, any plans or intentions to participate in the formulation, determination or direction of the basic business decisions of the issuer." Heil has criticized M–K's sale of certain real estate and would like to see M–K engaged in other types of business such as asbestos removal and nuclear power plant dismantlement. *See* Deposition of Heil at p.216. These criticisms and suggestions might someday lead Mr. Heil to have plans or intentions to actually participate in M–K's basic business decisions. But as the Court just discussed, the Court believes Heil when he says that he has no current plans to so participate.

A related argument by M–K is that Heil falsely claimed that he had acquired the M–K shares "for purposes of investment." The Court cannot find this statement to be false. The Court is again persuaded by Heil's testimony at the evidentiary hearing that he purchased the stock for investment purposes. The Court found credible his testimony that he felt the heavy construction industry was rebounding and that M–K was positioned to take advantage of that rebound.

### CONCLUSIONS OF LAW

The Court has federal question jurisdiction over this matter pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and diversity jurisdiction as plaintiff and defendant are residents of different states and more than $10,000.00 is at issue. *See* 28 U.S.C. § 1332.

M–K's motion for preliminary injunction and Heil's motion to dismiss both depend on the sufficiency of Heil's 13D statement. Section 13(d) of the Securities Exchange Act of 1934, and the Securities and Exchange Commission (SEC) regulations promulgated thereunder, set forth the information that must be disclosed by persons accumulating more than five percent of a company's common stock. This disclosure is designed to allow investors to determine the value of a corporation's securities more accurately and to make more informed investment decisions. *See Portsmouth Square v. Shareholders Protective Comm.*, 770 F.2d 866 (9th Cir.1985). At issue in this case, is the SEC's requirement that Heil

state the purpose or purposes of the acquisition of securities of the issuer. Describe any plans or proposals which the reporting persons may have which relate to or would result in:

(a) the acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer;

(b) an extraordinary corporate transaction such as a merger, reorganization or liquidation involving the issuer or any of its subsidiaries;

(c) a sale or transfer of a material amount of assets of the issuer or any of its subsidiaries;

(d) any change in the present board of directors or management of the issuer including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board;

(e) through (j)....

*See* 17 C.F.R. § 240.13d–101 at p. 123 (April 1, 1987).

■ M–K alleges that Heil's Schedule 13D statement violated these requirements and seeks injunctive relief. The United States Supreme Court has left open the question whether injunctive relief can issue on a showing that a Schedule 13D statement is misleading without a showing of any specific irreparable harm to shareholders. *See Rondeau v. Mosinee*, 422 U.S. 49 at n. 9, 95 S.Ct. at n. 9, 45 L.Ed.2d 12 (1975). But persuasive authority now exists that injunctive relief can issue simply upon a finding that the 13D statement is materially misleading. *See General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir.1977); *Sommer Business Organizations* § 78.02[3] at p. 7A–40 to 7A–44.4 (1982).

■ Is Heil's 13D statement materially misleading? Under the SEC regulations, Heil must divulge any plan or purpose he has to seek representation on M–K's board of directors. M–K suggests that the 13D statement be amended to state as follows:

Mr. Heil would like to obtain representation on the M–K board of directors at some point in the future but he has no current plans to seek the election or appointment of either himself or one or more of his representatives on the M–K board of directors or to solicit proxies or consents.

*See* M–K's proposed 13D statement at p. 7.

Heil's original 13D statement contained a provision very much like the one M–K is proposing above. In his original 13D statement Heil stated that he was considering representation on the board of directors. He subsequently amended that statement to read that he had no current plans to seek representation on the board. When the original 13D statement is read together with the amendments, an investor could see that Heil was considering representation on the board of directors when he purchased the shares but changed his mind at a later date. This raises a question whether an amendment supersedes the original or is simply a supplement. Counsel were not able to find any authority on this point. There is, however, a solution to this issue. Heil has submitted a proposed amended 13D statement which accurately brings together all of his 13D filings. On the issue of representation on the board, this amendment states that the contents of the original 13D remain in effect, thereby informing investors that Heil was considering representation on the board of directors at the time he acquired the shares. The proposed 13D statement then goes on to state:

In the face of management's hostility towards him, Edward F. Heil ceased consideration of the possibility of seeking representation on the issuer's board of directors; this decision has been strengthened as a result of the uncertainty arising from the subsequent changes in management and the board of directors of the issuer; as previously disclosed, Edward F. Heil has no current plans or intentions to seek representation on the issuer's board of directors either now or in the future, although Mr. Heil has not ruled out the possibility of changing his intentions in the future.

The Court finds that this proposal will adequately cure any confusion that may have previously existed. The Court will order that this proposed 13D statement be filed.

The issue regarding Heil's intent to purchase additional shares is very similar. This is another required disclosure under the SEC regulations quoted earlier. Heil's original 13D statement indicated that he was considering purchasing additional shares although he had no definite plans to do so. His amendments were silent on this point. If the statements are read together, they accurately reflect his intentions that he is considering purchasing additional

shares. Heil's proposed 13D again clarifies this issue by stating:

> The statement made in his original 13D that he [Heil] "has no definite plans for the acquisition of any additional securities of the issuer or the disposition of securities of the issuer, although consideration has been given to the acquisition of additional securities on the open market" was not withdrawn by the amendments to his Schedule 13D, has been true since July 1, 1988, and continues to be true.

█ Again, the Court can find no misleading material in this proposed 13D statement and finds that it contains the full disclosure necessary concerning the purchase of additional shares. M–K has further argued that Heil should disclose that he believes that M–K stock is attractive at prices around $40.00 per share. The Court, however, can find no authority mandating such a disclosure and will not so require.

The Court has already made the factual finding that Heil was truthful in stating that he purchased his shares for investment and thus that statement does not need to be corrected. The proposed 13D statement contains adequate disclosure on that issue.

M–K argues next that the 13D statements mention nothing about Heil's lawsuit seeking to invalidate M–K's "poison pill" amendment to the Shareholder Rights Plan. Heil's proposed 13D statement addresses that issue as follows:

> On July 26, 1988, Edward F. Heil filed suit against the issuer and the members of its board of directors in the United States District Court for the Northern District of Illinois. Mr. Heil filed an amended complaint in that action on July 29, 1988. The amended complaint, a copy of which is attached as Exhibit 4 hereto, seeks to declare invalid and enjoin the issuer's Shareholder Rights Plan, commonly referred to as a "poison pill." The action challenges both the original version of the poison pill which was adopted in 1986 and the "adverse person" amendments to the poison pill which were adopted on July 7, 1988, copies of

> which are included in Exhibit 4 hereto. The amended complaint alleges that both the original poison pill and the amendments were adopted for the purpose of entrenching existing management in their positions and constitute a breach of the fiduciary duties of the directors and that the adverse person amendments were aimed specifically at Mr. Heil and are intended to prevent him from acquiring ten percent or more of the issuer's stock. On August 1, 1988, the United States District Court for the Northern District of Illinois dismissed the lawsuit on the ground that the court lacked personal jurisdiction over the defendants. Edward F. Heil filed an appeal from the judgment of dismissal, which appeal has been briefed and argued and is awaiting decision by the United States Court of Appeals for the Seventh Circuit.

The Court finds this material accurate, and it contains a complete description of the "poison pill" suit. Heil has proposed that this information be filed, and the Court will so order.

█ M–K argues next that Heil has not adequately informed investors of the lawsuit by the Illinois Attorney General against him. M–K argues that Heil has simply quoted the allegations contained in M–K's amended complaint. But that 13D statement does divulge the existence and details about the Illinois lawsuit and, most importantly, informs investors why M–K itself believes the suit to be damaging. That is all Heil is required to divulge.

M–K also argues that Heil has failed to disclose that he has distinctive ideas about the direction M–K should take in its business dealings. Again, the proposed 13D statement addresses this issue as follows:

> At the time of the filing of his original Schedule 13D, Edward F. Heil had a general idea that the issuer should consider becoming involved in the business of asbestos removal, hazardous waste disposal, and nuclear plant dismantlement and was prepared to make that general suggestion to the issuer's management if they had asked his advice; Edward F.

Heil had no specific proposals on this or any other subject and never had any plan or intention of attempting to force or pressure the management into going into any of these businesses; in the face of management's hostility towards him, Mr. Heil has abandoned any idea of even offering the aforesaid general suggestion.

The Court finds that this proposal accurately sets forth the facts and should be filed.

In conclusion, the Court finds that defendant's proposed Schedule 13D amendment which was filed with the Court on October 24, 1988, is fully accurate and constitutes everything that Heil is required to disclose. M–K has further requested a finding that Heil's testimony is generally not credible. The Court disagrees. Heil's testimony at the evidentiary hearing was believable. Although his earlier deposition testimony was marred by his uncooperative attitude, the Court does not feel the deposition incidents warrant any judicial declarations.

■ Defendant Heil has proposed filing with the SEC the Schedule 13D amendment that he filed with the Court on October 24, 1988, and the Court will accept that proposal and order that that 13D statement be filed with the SEC. The defendant Heil shall be enjoined from purchasing or attempting to purchase additional M–K shares, soliciting proxies, or otherwise exercising or attempting to exercise any influence or control over M–K unless and until he files with the SEC the proposed 13D amendment he filed with the Court on October 24, 1988. The Court rejects M–K's request for any further injunctive relief or any further relief concerning the cost of mailing this Schedule 13D statement to shareholders. The Court has found Mr. Heil's testimony persuasive and cannot find that his 13D statements constituted misleading material. There is a question whether the original statements can be read together with the amendments and it is reasonable to read them together. But to reduce any chance of confusion, the proposed 13D amendment clarifies this matter and should be filed. Under these circumstances, Heil should not be required to pay the cost of mailing to every shareholder, and should not be further enjoined after he has filed the proposed 13D amendment. Once the proposed 13D amendment has been filed with the SEC, Heil should immediately notify this Court and submit a copy of the filing with the Court. The Court will reserve ruling on Heil's pending motion to dismiss until the Court receives a copy of the proposed 13D amendment that is filed with the SEC. When the Court receives that information, the Court will then consider dismissing this lawsuit along with the injunction issued with this decision.

In addition, the Court finds that the proposed Schedule 13D amendment filed by Heil with this Court on October 24, 1988, should contain a statement that this Court has now rendered a decision in the lawsuit before it, and that decision is attached as an exhibit to the 13D statement. No further characterization of the Court's decision is required. The decision, which will be an exhibit to the 13D statement, can speak for itself.

## ORDER

The Court has examined the entire record concerning the motion for preliminary injunction filed by plaintiff and the motion to dismiss filed by defendant. In accordance with the views expressed in the memorandum decision accompanying this order,

NOW, THEREFORE, IT IS HEREBY ORDERED that the motion for preliminary injunction filed by plaintiff be, and the same is hereby, GRANTED IN PART and DENIED IN PART. The defendant Edward F. Heil, be, and he is hereby, ENJOINED, from purchasing or attempting to purchase additional M–K shares, soliciting proxies, or otherwise exercising or attempting to exercise any influence or control over M–K unless and until he files with the Securities and Exchange Commission the proposed Schedule 13D amendment which was filed with this Court on October 24, 1988. That proposed 13D amendment

should have a statement within it that this Court has issued its decision which is attached as an exhibit to the Schedule 13D.

IT IS FURTHER ORDERED that the Court reserves ruling on defendant's motion to dismiss until such time as the defendant provides this Court with notification that he has filed his Schedule 13D amendment with the Securities and Exchange Commission, at which time the Court will decide whether to dismiss this lawsuit and the injunction granted herein.