K–N ENERGY, INC., Plaintiff,

v.

GULF INTERSTATE COMPANY, The Appalachian Company, Mark J. Millard, Raja W. Sidawi, Energy Enterprise Overseas, N.V., Westpool Investment Trust, P.L.C. and Shearson/American Express, Inc., Defendants.

Civ. A. No. 82–F–1881.

United States District Court,
D. Colorado.

June 30, 1983.

David Ebel, Davis, Graham & Stubbs, Denver, Colo., Allan Horwich, Shiff, Hardin & Waite, Chicago, Ill., for plaintiff.

John S. Pfeiffer, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., Anthony F. Phillips, Michael Young, Willkie Farr & Gallagher, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge:

THIS MATTER is before the Court on a complaint for preliminary and permanent injunctive relief, filed by the plaintiff on February 4, 1983. The complaint alleges violations of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, and common law fiduciary duties. The violations alleged are all in connection with the purchase of common stock of the plaintiff, K–N Energy, Inc., by the various defendants.

Jurisdiction of the Court is invoked under 15 U.S.C. § 78aa; 15 U.S.C. § 79y; 18 U.S.C. § 1964 and 28 U.S.C. § 1332. Venue is proper as the Court has determined that some of the acts and transactions complained of by the plaintiff took place within the District of Colorado.

On February 24, 1983, the plaintiff filed a Motion for Preliminary Injunction requesting the Court to enjoin the defendants from (a) voting any shares of K–N stock owned by them, in connection with the then upcoming K–N annual meeting of shareholders; (b) soliciting any proxy or consent with respect to K–N stock; (c) exercising or attempting to exercise any influence or control over the business or management of K–N; (d) acquiring any shares of K–N; and (e) continuing their ongoing violations of the Security Exchange Act of 1934 and of the Public Utilities Holding Company Act of 1935. It was agreed by the parties that the hearing on the Motion for Preliminary Injunction as well as a hearing on defendants' Motion to Dismiss or for Summary Judgment, filed on February 22, 1983, would be consolidated with the trial on the merits of plaintiff's complaint pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.

On March 23, 1983, the trial to the Court commenced. Each side was given an opportunity to summarize their view of the case and to offer exhibits into evidence. This done, the parties then agreed that the matter could be submitted to the Court for a determination based on the briefs of the parties and the exhibits and depositions offered and admitted into evidence. The Court thereafter took the matter under advisement.

We have reviewed the record in this case, the briefs submitted by the parties and the exhibits and deposition excerpts admitted into evidence. After careful consideration, it is our view that defendants' Motion to Dismiss or for Summary Judgment should be *DENIED*. Further we have determined that the evidence supports, in part, the plaintiff's complaint and that the injunctive relief sought by the plaintiff should be *GRANTED* in part and *DENIED* in part.

I.

The factual background surrounding this case is not in real dispute. The plaintiff is a Kansas corporation with its principal place of business in Lakewood, State of Colorado. While K–N Energy, Incorporated (K–N) is a diversified energy corpora-

tion, a substantial amount of its business is in the retail and wholesale supply and delivery of natural gas to industrial, agricultural, commercial and residential customers in Colorado and surrounding states. At all times relevant to this action, the common stock of K–N has been registered with the Securities and Exchange Commission pursuant to section 12(b) of the Security Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78*l* (b). ·K–N is also a gas utility company as that term is defined in the Public Utility Holding Company act of 1935 ("1935 Act"), 15 U.S.C. § 79b(a)(4), and is a public utility company as the 1935 Act defines that term, 15 U.S.C. § 79b(a)(5). The plaintiff has substantial holdings in natural gas producing properties in the Rocky Mountain region and in the midwest.

Mr. Thomas Creigh is Chairman of the Board of K–N. Mr. Robert Wilson is the President of K–N. Milton Williams is a former director of K–N.

The defendant, Gulf Interstate Company, is a Delaware corporation with its principal place of business in Houston, Texas. Gulf Interstate Corporation ("Gulf") is involved in various phases of energy development and supply. Gulf also invests in other energy-related concerns. Dr. C.T. Wells ("Wells") is the President of Gulf.

The defendant, The Appalachian Company ("TAC"), is a Delaware corporation, with its principal place of business in Worthington, Ohio. Mr. Sy Orlofsky ("Orlofsky") is the President of TAC. Wells is a director of TAC. Gulf holds a substantial block of TAC common stock.

The defendant, Raja W. Sidawi ("Sidawi"), is a citizen of Austria and Syria residing in London, England. Sidawi is the owner individually and in conjunction with defendant Energy Enterprises Overseas, N.V., of a large block of the common stock of Gulf and TAC. Sidawi is a director of Gulf and TAC. Defendant Energy Enterprises Overseas, N.V. is wholly owned by Sidawi.

The defendant, Westpool Investment Trust P.L.C. ("Westpool") is an investment holding company with its principal place of business in London, England. Westpool is involved in oil and gas exploration in the United States. Indirectly, Westpool holds a large number of shares of common stock of TAC. The Rayne family holds approximately 37% of the stock of Westpool. Mr. Robert Rayne is a director of TAC.

The defendant, Shearson/American Express, Inc., ("Shearson"), is a New York corporation with its principal place of business in New York City. Shearson is a large stock brokerage and investment banking firm. Shearson has provided Gulf with a substantial amount of investment and financial services since at least 1980. Mr. Mark Wellman ("Wellman") is a Gulf director. Shearson has also provided financial advice to TAC.

The defendant, Mark J. Millard ("Millard"), is a resident of the State of New York. Millard is a Senior Managing Director of investment banking for and a director of Shearson. Millard is the Chairman of the Board and a director of Gulf and TAC.

Beginning in early 1979, the various defendants, other than Shearson, began purchasing K–N common stock. These purchases continued on and off through the fall of 1982. On October 15, 1982, Gulf and TAC made a joint purchase of 375,000 shares of K–N common stock. On October 25, 1982, the defendants, other than Shearson, filed a Schedule 13D with the Securities and Exchange Commission. A copy of the Schedule 13D was also provided to K–N. A Schedule 13D must be filed with the Securities and Exchange Commission ("SEC") and copies provided to the issuer whenever a "person",[1] as that term is defined by regulations promulgated by the SEC, acquires "beneficial ownership"[2] of more than 5% of a class of equity security registered pursuant to Section 12 of the 1934 Act. *See,* Section 13(d) of the Securi-

---

**1.** These terms and concepts will be discussed later in the opinion.

**2.** Id.

ties Exchange Act of 1934, 15 U.S.C. § 78m(d)(1). The defendants other than Shearson held approximately 8% of the common stock of K–N following the purchase by TAC and Gulf on October 15, 1982. The common stock of K–N is a class of equity security registered under Section 12 of the 1934 Act. Because of the definition of "person" under the statute, 15 U.S.C. § 78m(d)(3), the defendants, other than Shearson, filed a Schedule 13D with the SEC and sent copies to the issuer, K–N.

Certain information must be provided within the Schedule 13D including, *inter alia,* the names and background of the filing parties, the number of shares beneficially owned by the filing parties and the purpose for which the shares were acquired. The filing defendants responded to each of these queries.

During the time from early 1979 until October of 1982, other entities were purchasing K–N common stock. Alpha Capital Company, a California based investment company run by Mr. William Figara, began acquiring K–N common stock sometime in early 1979. Alpha Capital Company ("Alpha") has at times owned a significant number of shares of Gulf common stock. Mr. Figara is an acquaintance of both Wells and Millard.

Energy International, N.V. is an offshore investment company. Sometime in 1979 it began to purchase K–N common stock. Shearson had a role in the organization of Energy International N.V. ("Energy International"). Shearson provided investment advice to Energy International. Mr. Millard is one the Advisory Committee of Energy International.

Shearson/American Express is the sole owner of Shearson Asset Management. Shearson Asset Management was formed to service discretionary and advisory accounts established by Shearson Asset Management customers. At various times accounts managed by Shearson Asset Management have contained K–N common stock.

On November 5, 1982, the plaintiff commenced this action by filing the initial complaint. The plaintiff later filed a First Amended Complaint (December 8, 1982) and thereafter a Second Amended and Supplemental Complaint (February 4, 1983). The plaintiff contends that the defendants violated and are continuing to violate Section 13(d) of the 1934 Act by filing an untimely, materially false and misleading Schedule 13D. Plaintiff alleges that additional members of the filing "group" [3] existed that were not revealed in the Schedule 13D filed on October 25, 1982. Plaintiff asserts that when these additional members are considered, together with the K–N common stock they hold, the group held in excess of 5% of the outstanding K–N common stock well before the purchase that took place on October 15, 1982. Thus the filing that took place on October 25, 1982, was untimely and also false in that it failed to reveal the other group members and the numbers of shares of K–N common stock owned beneficially by the additional group members.

In addition, the plaintiff asserts that the Schedule 13D filed on October 25, 1982, is false and misleading in that it fails to disclose the true purpose for which the stock of K–N was acquired by the filing group. Item 4 of Schedule 13D requires the purpose of the acquisition to be revealed. The Schedule 13D filed on October 25, 1982, states that the stock is being held solely as an investment. Plaintiff contends that the defendants and the other group members intend to use the stock they have accumulated to take control of K–N and/or to acquire valuable gas producing properties from K–N. Alternatively, the plaintiff alleges that the group intends to use the stock they hold to obtain representation on the K–N board of directors. Item 4 of the Schedule 13D filed by the defendants, other than Shearson, indicates that certain alternatives were considered by the filing group including acquiring control of K–N, obtaining board representation or attempting to trade their K–N stock for certain assets of

**3.** Id.

K–N. However, the Schedule 13D indicates that these alternatives do not represent the purpose of the filing group "as of this date". *See*, Schedule 13D, October 15, 1982, at pg. 15. Plaintiff argues that the evidence shows that these statements do not represent the true purpose behind the acquisition of K–N common stock by the filing group and others.

Plaintiff also alleges that when the putative group members and their holdings of K–N common stock are accounted for, the Schedule 13D fails to disclose that the group may well be in violation of the 1935 Act. Under provisions of the 1935 Act persons holding in excess of 10% of the outstanding equity securities of a public utility company may be deemed to be a public utility holding company and be subject to certain restrictions under the 1935 Act. These restrictions could have an impact on the business activities and opportunities of K–N. The plaintiff asserts that this information was inadequately described in the Schedule 13D filed on October 25, 1982, both because it failed to reveal the true percentage of outstanding K–N common stock held by the group as a whole and because the impact of such holdings was not described.

The plaintiff also maintains that when the total number of shares of K–N common stock held by all group members is tallied together with the value the shares represent, the Schedule 13D is misleading in that it does not disclose that the defendants have failed to register their holdings in conformance with the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (HSR Act), 15 U.S.C. § 18a(a)–(b). The act requires persons holding in excess of $15 million of the voting securities of a company with assets of $10 million or more, to notify the Federal Trade Commission and the Antitrust Division of the Justice Department and wait a certain number of days before consummating the transaction that puts their holdings at or over the $15 million dollar threshold. Plaintiff asserts that the filing group, together with the additional members of the group (Shearson/Shearson Asset Management, Alpha,

Energy International) have held in excess of $15 million of voting securities of K–N for a period of time and have not notified the FTC or the Justice Department nor have they revealed these omissions in the Schedule 13D.

The plaintiff contends that as a result of these continuing violations of the federal securities laws in conjunction with the acquisition of K–N stock, the defendants have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The RICO statute provides for civil damages to those harmed by the illegal activities covered by the Act. The Act extends to fraud in the sale of securities, 18 U.S.C. § 1961(1)(D). RICO has been applied in civil as well as criminal matters.

Finally, the plaintiff asserts that in using information provided by former K–N employees or persons retained by K–N to provide certain studies, the defendants have facilitated, aided and abetted the breach of fiduciary duties owed to the plaintiff. In early 1979, K–N retained Booz, Allen & Hamilton, a management consulting firm, to do a study of the K–N business operations. Mr. Gerald Thomas ("Thomas") was the Booz, Allen employee in charge of the K–N study. He later left Booz, Allen and joined Gulf. It is K–N's contention that during his work at K–N, Thomas acquired confidential information about K–N resource holdings which he later passed on to Gulf. In addition K–N asserts that Gulf received a report from CBW services detailing the oil and gas interests held by K–N. CBW Services is owned by a former K–N executive together with the son of a former K–N director. K–N believes that CBW Services passed on confidential information about K–N to Gulf. This information was acquired by the employees of CBW Services while associated with K–N in a confidential relationship.

This set of facts forms the basis for the present litigation.

## II

Because Section 13(d) of the 1934 Act is the focal point in this action, a brief discus-

sion of that section as well as the rules promulgated by the SEC to effectuate the requirements of the section is necessary to provide a framework within which to analyze the claims made by the plaintiff.

Section 13(d) of the 1934 Act, 15 U.S.C. § 78m(d)(1) requires

Any person who after acquiring ... the beneficial ownership of any equity security of a class which is registered pursuant to section 78 1 of this title, ... is ... the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security, ... send to each exchange where the security is traded and file with the Commission, a statement containing such of the following information, and such additional information as the Commission may, by rules and regulations, prescribe as necessary or appropriate in the public interest or for the protection of investors ...

The section then goes on to require that the statement contain, *inter alia,* the general background of the beneficial owners [§ 78m(d)(1)(A)], the number of shares held by each beneficial owner [§ 78m(d)(1)(D)] and the purpose for which the stock in question was acquired [§ 78m(d)(1)(C)]. The section also requires the filing parties to amend the statement at any time material changes occur in the facts in the statement, 15 U.S.C. § 78m(d)(2). The section also states that when two or more persons act together to acquire the securities the syndicate or *group* shall be considered a "person" for purposes of the filing requirements, 15 U.S.C. § 78m(d)(3).

■ The purpose behind Section 13(d) is to alert the marketplace and holders of the security in question to every large rapid aggregation or accumulation of that security, regardless of the technique employed, which might reflect a potential change in corporate control, *GAF Corporation v. Milstein,* 453 F.2d 709, 717 (2nd Cir., 1971). Without such information investors considering a sale or purchase of the security would not be able to adequately evaluate the relative worth of the security. As the Court of Appeals for the First Circuit has noted

Although such disclosure may greatly affect the internal distribution of corporate power, Congress was careful to avoid tipping the balance of federal regulation in favor of either management or those attempting a change in corporate control; the balance was struck in favor of allowing investors to be informed of potential changes in corporate control and permitting the market to value the shares accordingly.

*General Aircraft Corp. v. Lampert,* 556 F.2d 90, 94 (1st Cir., 1977).

Congress has itself stated that the purpose of Section 13(d) is to provide existing shareholders as well as potential investors with information about a change in ownership and control of the issuer to enable them to make informed investment decision, *Jacobs v. Pabst Brewing Co.,* 549 F.Supp. 1050, 1057 (D.Del., 1982) *citing* S.Rep. No. 550, 90th Cong. 1st Sess. 7 (1967); H.R.Rep. No. 1711, 90th Cong. 2d Sess. 8, *reprinted in* [1968] U.S.Code Cong. & Ad.News 2811–2812.

■ Within Section 13(d) are two subsections of particular importance in the instant case. The statute defines a "person" to include two or more people who are acting together formally or informally to acquire, hold or dispose of the securities of the issuer, 15 U.S.C. § 78m(d)(3). Such a *group* is a "person" within the meaning of Section 13(d) of the 1934 Act. While the group members must agree to act together in order to fall within the purview of § 78m(d)(3), the agreement need not be formalized, *Securities and Exchange Commission v. Savoy Industries,* 587 F.2d 1149, 1163 (D.C.Cir., 1978); *Corenco v. Schiavone & Sons,* 488 F.2d 207 (2nd Cir., 1973).

The statute also dictates that within the Schedule 13D filed by an individual or group, the purpose behind their acquisition of the issuer's securities must be revealed, 15 U.S.C. § 78m(d)(1)(C). Specifically, the statute, as amplified by the rules promul-

gated by the SEC, require the filing individual or group to reveal any intent to acquire control of the issuer. Further, the filing group must reveal any plan to acquire the assets of the issuer or any intent to change the make up of the board of directors or the management of the issuer, § 78m(d)(1)(C), Securities and Exchange Commission Regulation 13D, 17 C.F.R. § 240.13d–101, at 110.

Section 13(d) of the 1934 Act applies only to those "beneficial owners" of more than 5% of the issuer's outstanding stock. The SEC has defined a "beneficial owner" as including those who have

(1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or,

(2) Investment power which includes the power to dispose, or to direct the disposition of such security.

SEC Regulation 13D, 17 C.F.R. § 240.13d–3(a)(1)(2), (1982).

■ SEC Regulations indicate that the power to vote or to dispose of the security may be held directly or indirectly "through any contract, arrangement, understanding, relationship or otherwise." SEC Regulation 13D, 17 C.F.R. § 240.13d–3(a), (1982). With this general framework in mind we turn to the substantive claims of the respective parties in this action.

### III.

■ Initially, defendants contend that the plaintiff, as the issuer of the stock in question, lacks the requisite standing to bring a claim for violation of Section 13(d) of the 1934 Act. It is the position of the defendants that the statute does not imply a private cause of action for injunctive relief in favor of the issuing corporation. We cannot agree. The defendants have cited the Court to several opinions from other federal district courts which have determined that the issuer of a security may not bring an action under Section 13(d) of the 1934 Act, *Holly Sugar Company v.*

*Buschbaum,* [1981–82 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,366 (D.Colo., 1981); [4] *Liberty Nat'l Ins. Co. v. Charter Co.,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,797 (N.D.Ala., 1982); *First Alabama Bancshares, Inc. v. Lowder,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,015 (N.D.Ala., 1981); *American Bakeries Co. v. Pro-Met Trading Co.,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,925 (N.D.Ill., 1981); *Gateway Industries, Inc. v. Agency Rent-A-Car, Inc.,* 495 F.Supp. 92 (N.D.Ill., 1980); *Sta-Rite Industries v. Nortek, Inc.,* 494 F.Supp. 358 (E.D. Wis., 1980).

We have reviewed these cases and, while each raises certain questions in regard to the standing of an issuer under Section 13(d) of the 1934 Act, we decline to follow them. The Court is more persuaded by the opinions of various circuit court opinions which have addressed the issue and determined that an issuer does have standing under Section 13(d), at least where injunctive relief is sought in an effort to correct a false or misleading Schedule 13D. *Treadway Companies, Inc. v. Care Corp.,* 638 F.2d 357 (2d Cir., 1980); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216 (4th Cir., 1980), *cert. denied,* 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240 (8th Cir., 1979). In other circuit court cases issuer standing under Section 13(d) has been acknowledged implicitly, *Wellman v. Dickinson,* 682 F.2d 355 (2d Cir., 1982); *Corenco Corp. v. Schiavone & Sons, Inc.,* 488 F.2d 207 (2d Cir., 1973); *Bath Industries v. Blot,* 427 F.2d 97 (7th Cir., 1970). While issuers should not be permitted to use Section 13(d) as a weapon to discourage takeover bids or to prevent large accumulations of stock which would facilitate a takeover bid, we are of the view that, in many cases, the issuer is in the best position to review a Schedule 13D and to detect errors and/or omissions therein. Where the issuer has been permitted to

---

**4.** In *Holly Sugar Company,* Judge Jim Carrigan of this Court determined that the issuer "probably" did not have standing under Section 13(d).

However, the matter was not resolved with finality.

bring an action under the section, it has been viewed as a step taken on behalf of existing shareholders and potential investors. In many instances the issuer will be in the best position to spot errors or omissions within a Schedule 13D and thereafter see to it that the Schedule is corrected. The purpose behind Section 13(d) would be substantially frustrated if corporate issuers were precluded from seeking injunctive relief where an error or omission is detected in a Schedule 13D. We find that the issuer in this case, K–N Energy, has standing to sue for injunctive relief under Section 13(d) of the 1934 Act.

### IV.

Plaintiff alleges that the Schedule 13D filed by the defendants (other than Shearson) on October 25, 1982, as amended on January 7, 1983, is false and misleading in that it fails to disclose all the members of the group and the total number of shares of K–N common stock held by the group. Associated with this allegation is the claim, made by the plaintiff, that the Schedule 13D filed on October 25, 1982, was untimely because the group including the additional members reached the five percent level at a time well before October 15, 1982; the date Gulf and TAC made the purchase of 375,000 shares of K–N common stock.

The contentions of K–N Energy hinge on a showing that additional entities holding K–N common stock should have been included as group members along with those who ultimately filed the Schedule 13D. The entities in question are: (1) Shearson-American Express/Shearson Asset Management; (2) Energy International, N.V. and (3) Alpha Capital Company. A brief background sketch of each of these entities has been given above. We now examine the connections and interrelationships between these putative group members and the members of the filing group as listed in the Schedule 13D filed on October 25, 1982.

### A.

As discussed above, Shearson Asset Management is a wholly owned subsidiary of Shearson/American Express. Many of the officers and directors of Shearson/American Express are also officers and/or directors of Shearson Asset Management. The two entities also share in investment research done by analysts with each separate entity.

Shearson Asset Management provides advice to and manages the accounts of customers who place money in either discretionary or advisory accounts with Shearson Asset Management. Discretionary account holders authorize Shearson Asset Management portfolio managers to buy and sell securities held in the customer's account without prior customer authorization. Hence, the name "discretionary" account. Advisory accounts are just that, advisory. The customer receives investment advice from the portfolio manager assigned to that account, but no trading may be done without the customer's prior approval. As part of the service provided by Shearson Asset Management, a list of approved investments is regularly developed by the portfolio managers. This list is used as a guide to investments made in customer accounts. K–N Energy common stock has never been on the approved list. Some K–N Energy stock has been held in various client accounts at times relevant to this dispute. While the number of shares is the subject of some disagreement, the holdings in customer accounts (other than the *advisory* account of Energy International, N.V.) totaled something less than 15,000 shares at all times relevant to this case. Energy International holds approximately 140,000 shares of K–N stock in its advisory account with Shearson Asset Management. That amount may have been larger at times prior to the filing of the Schedule 13D in October of 1982. It is uncontroverted that Shearson Asset Management itself holds no K–N common stock for its own use and benefit.

By the definition of "beneficial owner" outlined earlier, it appears that Shearson Asset Management might well be deemed to be the beneficial owner of the

K–N common stock held in the discretionary accounts of its customers. A beneficial owner includes those who have the power to buy or sell the security in question, SEC Regulation 13D, 17 C.F.R. § 240.13d–3(a)(2), (1982). However, the plaintiff asserts that all K–N common stock held by Shearson Asset Management in any manner should have been included within the Schedule 13D because Shearson Asset Management and/or Shearson-American Express were and continue to be group members with control over all the K–N common stock held in customer accounts.

Plaintiff bases this assertion on the relationship between Shearson American Express and the filing group members. Shearson provides investment services and advice to TAC and Gulf. One of Shearson's most senior officers and directors is Mr. Millard, an acknowledged group member. Plaintiff maintains that there is enough evidence to show that Shearson had agreed to be a member of the group and acquire K–N stock. Plaintiff believes that the close ties between Shearson and Shearson Asset Management justify a determination that Shearson is the beneficial owner of the shares of K–N common stock held in customer accounts by Shearson Asset Management. We have reviewed the evidence presented by the plaintiff and we have determined that it fails to prove that Shearson or Shearson Asset Management should be included as group members for purposes of Section 13(d) of the 1934 Act.

The evidence outlining the contacts between Shearson and the various members of the group which filed the Schedule 13D merely establishes that a relationship existed between Shearson and TAC, Gulf, Sidawi and Millard. However, as the plaintiff acknowledges, relationships alone are not enough to show an agreement to act in concert sufficient to indicate group membership, *Securities and Exchange Commission v. Savoy Industries*, 587 F.2d 1149, 1166 (D.C.Cir., 1978); *Texasgulf, Inc. v. Canada Development Corp.*, 366 F.Supp. 374 (S.D.Tex., 1973). While an agreement to act in concert need not be in writing or in any other way formalized, there must be evidence that indicates an intention to act in concert over and above the prior and continuing relationships between the various parties, *Wellman, supra; Corenco, supra*. Although the plaintiff has outlined in great detail the ongoing relationship between Shearson on the one hand and the various group members on the other, on close examination there is no evidence beyond these relationships indicative of an agreement to act in concert *vis a vis* the purchase of K–N common stock.

Under different circumstances it might be possible to say that the shares of K–N common stock held by Shearson Asset Management are attributable to the group because Mr. Millard, an acknowledged group member has control over the disposition of those shares. In *Wellman, supra,* the district court found that an advisor to various clients with discretionary accounts held such control over the other advisors that it in fact retained beneficial ownership of the shares in dispute. Because that advisor was also involved in a bid to acquire a substantial block of the target corporation's stock, the shares held in the discretionary accounts were attributed to the group the advisor was working with. The Court of Appeals for the Second Circuit upheld this determination, *Wellman, supra,* at 363–365. In *Wellman,* however, the Court had before it the testimony of the other directors of the discretionary accounts who stated that they would follow without question the advice of the advisor involved in the group effort. The advisor, Eberstadt M & D, was held to be the beneficial owner of the stock because it had the power to invest the shares held in various discretionary accounts and mutual funds.

In the case before us, such additional evidence is lacking. The plaintiff would have use find that every share of K–N common stock held in any way by Shearson Asset Management was attributable to Mr. Millard simply because of his involvement with the filing group and his position within the Shearson/American Express hierarchy. Balanced against this is the testi-

mony of Mr. Raimondo, treasurer, corporate vice-president and director of Shearson Asset Management. His testimony, essentially unrefuted by the plaintiff, indicates how little control Mr. Millard has over the investment decisions of the portfolio managers servicing the discretionary and advisory accounts of Shearson Asset Management customers. Plaintiff has failed to prove to our satisfaction that Shearson or Shearson Asset Management are members of a group that agreed to act in concert in acquiring K–N common stock. Moreover, plaintiff has failed to show that the stock of K–N held indirectly by Shearson or Shearson Asset Management should be attributed to Mr. Millard as beneficial owner. Under these circumstances it is unnecessary to determine whether the shares held in advisory accounts could, under any circumstances, be "beneficially" owned either by Shearson or Mr. Millard. It is also unnecessary to determine whether Shearson, absent beneficial ownership of any K–N common stock, could still be held to be a group member. This would still require evidence of an agreement between Shearson and the acknowledged group members to acquire or hold K–N common stock. There is no evidence of such an agreement beyond the ongoing relationships between the parties and we have determined that, in this case, such evidence alone is insufficient to find group membership on the part of Shearson.

### B.

■ Plaintiff also argues that Energy International, N.V. should be deemed to be a group member and the shares of K–N common stock held by Energy International added to the total group holdings. Again, we cannot agree. Plaintiff's position with regard to Energy International rests primarily on the role of Mr. Millard as an investment advisor to Energy International together with the fact that Shearson Asset Management is one of the three members of the Board of Management of Energy International. Having determined that Shearson Asset Management is not a group member its involvement with Energy International is of less importance. Mr. Millard provided advice to Energy International on investment matters. However, he was only one of twenty-seven such advisors on Energy International's advisory committee. The affidavit of Mr. Richard Oliver Bernays, a director of one of the two investment managers of Energy International, indicates that Mr. Millard did not have the power to control the investment decisions for Energy International. At best the evidence in regard to Mr. Millard is inconclusive on the issue of Energy International's membership in a group acquiring K–N common stock.

Plaintiff also points out that during the time from early 1979 until the fall of 1982 Energy International made purchases at points in time parallel to the purchases by other group members. The time periods mentioned, however, are not in terms of purchases made on the same day or even during the same week. Instead, plaintiff states that Energy International made purchases of K–N stock during the "Spring" of 1979 at the same time as other group members purchases shares of K–N common stock. Again in "July and August of 1980", Energy International made purchases as did other group members. While evidence of parallel purchasing *may* evidence an agreement to act in concert, we are of the view that such parallel purchasing, to be persuasive, would have to involve relatively large amounts of stock purchased over a short period of time; something absent from the facts of this case. Indeed, it is interesting to note that the plaintiff mentions no purchases of K–N stock by Energy International after August of 1980. Presumably any parallel activity ceased after that time. Therefore, the plaintiff would have us refer back to purchases made over two years before this action was commenced as evidence of some agreement that continues to date.

Finally, the plaintiff calls the our attention to the fact that certain members of the filing group received information about the holdings of Energy International from Mr. Millard. However, this information trav-

eled in one direction—from Mr. Millard to the other filing group members. At no time does it appear that Energy International inquired about the holdings of the others. Such information sharing may suggest that Mr. Millard *hoped* that Energy International would throw its support behind any actions taken by the others, but it provides no indication that Energy International *agreed* to do so. We have already stated that Mr. Millard did not have the power to acquire K–N common stock on behalf of Energy International nor did he have the authority to commit the K–N stock held by Energy International to any long term plan. Accordingly, the fact that Mr. Millard shared certain information with other members of the filing group provides little support for the argument that Energy International was also a group member. The plaintiff has failed to satisfy its burden of showing that Energy International agreed to act in concert with others to acquire K–N common stock.

### C.

■ Plaintiff also contends that Alpha Capital Company was an additional member of the group whose identity and holdings in K–N common stock should have been included within the Schedule 13D filed on October 25, 1982. Plaintiff's claim is based in part on evidence of information sharing between Alpha, by way of its president, Mr. Figara, and Mr. Wells of Gulf and Mr. Millard. In addition, TAC, Gulf and Alpha shared the cost of a report done on K–N's gas reserves. However, it must also be noted that Alpha was the holder of approximately 7% of Gulf's common stock at or about the time that the report was done and the information exchanged. Certainly, the evidence suggests that Alpha may have been involved in some plan regarding K–N. However, the evidence would also support a finding that the information was shared because each knew of the other's investment in K–N as well as the fact that Alpha was a large shareholder

of Gulf commons stock. The information provided Alpha and the information Alpha provided in return might simply have reflected this relationship unrelated to any group activity. That evidence alone is insufficient to support a determination that Alpha Capital was a member of a group acting in concert to acquire K–N common stock.[5]

### V.

Plaintiff maintains that the Schedule 13D filed on October 25, 1982, was false and misleading in that it failed to disclose the true purpose behind the acquisition of the K–N common stock by the filing group members. We are of the view that the evidence before us supports the plaintiff's contention.

■ As outlined above, 15 U.S.C. § 78m(d)(1)(C) requires the party filing a Schedule 13D to reveal the purpose for which the stock in question has been purchased. The regulations promulgated by the SEC go on to outline this requirement in greater detail, SEC Regulation 13D, 17 C.F.R. § 240.13d–101, (1982). As recent case law has made clear, the purpose behind the acquisition of the stock must be revealed even if there is no present plan to implement that purpose or if such a plan is less than definite, *Dan River, Inc. v. Unitex Limited,* 624 F.2d 1216 (4th Cir., 1980); *Chromalloy American Corp. v. Sun Chemical Corp.,* 611 F.2d 240 (8th Cir., 1979); *Kirsch Co. v. Bliss & Laughlin Industries, Inc.,* 495 F.Supp. 488 (W.D. Mich., 1980).

In the instant case, the Schedule 13D filed on October 25, 1982, indicates that the stated purpose behind the acquisition of K–N stock by the filing group is investment only. Item 4 of the Schedule 13D also provides information on other courses of action that were considered in the past, but were not finally decided on or put into action. On the other hand, the plaintiff has presented evidence which indicates that the purpose (or purposes) behind the acquisi-

---

**5.** Similarly, we find no evidence to support a determination that the so-called "Annex B" individuals should be considered group members for purposes of Section 13(d) of the 1934 Act.

tion of the K–N common stock is something other than simply an investment.

■ A report dated August 11, 1980, indicates that Mr. Orlofsky, president of TAC, was at that time preparing for a proxy fight among K–N shareholders in an attempt to replace one or more of the K–N directors. The depositions of Mr. Millard and Mr. Orlofsky show that steps were initiated to acquire financing for a tender offer to K–N shareholders by members of the filing group. This effort continued as late as early September of 1982, less than two months before the Schedule 13D was filed. The depositions also reveal that the planned tender offer fell apart because the financing was unavailable and not because of any second thoughts as to the advisability of the tender offer.

Further, the evidence presented shows that Dr. Wells, the president of Gulf, contacted a former K–N director in an effort to determine how best to gain representation on the board of directors of K–N Energy. The precise date of this meeting is in dispute, but the undisputed fact is that such an effort was made by an agent of one of the filing group members. The defendants point out that Dr. Wells sought information on how best to convince the existing K–N management to willingly provide the group Dr. Wells represented with board representation; i.e., Dr. Wells wanted an "invitation" from the existing board members as well as management. While that may well have been the case, the fact remains that the filing group, shortly before or shortly after they reached the 5% plateau, took steps towards making a change in the representation on the board of directors of the issuer.

Finally, the documents turned over to the plaintiff pursuant to our Order entered on March 23, 1983, indicate that the filing group had a purpose or purposes beyond investment in acquiring a substantial block of K–N common stock. In a memorandum to Mr. Orlofsky from Mr. Millard, dated June 21, 1982, several alternatives in regard to K–N are discussed including gaining control, acquiring board representation

and trading the stock held by the group for certain gas producing properties held by K–N Energy. Nowhere in that document is the possibility of holding K–N common stock solely as an investment discussed. In addition, certain draft Schedule 13D's were turned over to the plaintiff following our March 23, 1983, Order. A draft dated October 15, 1982, the date of the purchase which put the group over the 5% level of ownership, states in Item 4 that the purpose of the group was to "seek some measure of influence on and ownership of Kansas-Nebraska". That draft goes on to list the possible courses of action or plans to effectuate that purpose. None of the alternatives raised include holding the K–N common stock as simply an equity investment.

■ We are of the view that the explanation described in Item 4 of this draft Schedule 13D is more indicative of the group's purpose than that described in the Schedule 13D that was ultimately filed by the group October 25, 1982. While each item of evidence discussed above may not, in itself, indicate a contrary purpose on the part of the filing group, the cumulative effect provides a clear indication that the K–N common stock was not being held simply as an investment. A person or group filing a Schedule 13D may not use "investment" as a catch-all purpose when the plans for implementing another purpose or purposes are indefinite or undeveloped. To do so would frustrate the intent behind Section 13(d) of the 1934 Act. While disclosures overstating the certainty of plans may be as misleading as the failure to adequately disclose the full scope of such plans, that is not a justification for indicating a purpose that in fact is not under consideration by the filing group. *See, Chromalloy American Corp., supra*, at 247. Section 13(d) of the 1934 Act requires the filing party to reveal any purpose tending towards obtaining control of the issuer, 15 U.S.C. § 78m(d)(1)(C). The SEC rules in turn define "control" to include

[T]he possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

SEC Regulation 12B, 17 C.F.R. § 240.12b–2, (1982); made applicable to Section 13(d) of the 1934 Act by 17 C.F.R. § 240.12b–1, (1982).

■ This definition of control closely resembles what we believe was and is the overall purpose behind the acquisition of K–N common stock by the filing group members; the desire to influence the management and policies of K–N Energy. The Schedule 13D filed on October 25, 1982, as amended on January 7, 1983, is false and misleading in its failure to outline the true purpose behind the acquisition of the common stock of the plaintiff. Further, the Schedule 13D should have given some indication that steps were taken by various group members to gain influence over the affairs of K–N Energy at times shortly before the filing of the Schedule 13D. To say that certain courses of action have been considered in the past without indicating the steps taken or their relative proximity to the date the Schedule 13D was filed was also misleading.

## VI.

■ Plaintiff has also alleged that the Schedule 13D filed on October 25, 1982, is false and misleading in that it fails to disclose violations of the Public Utilities Holding Company Act of 1935, 15 U.S.C. § 79a, *et seq.*, and the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a(a)–(b). Because we have determined that the group does not include additional members holding shares of K–N common stock, these claims are largely resolved. Each of these claims hinged on a determination that the group held more stock than that revealed in October 25, 1982, Schedule 13D. The evidence presented does not support such a contention.

However, the statement in the Schedule 13D which described the possible impact of the 1935 Act on K–N as a result of the group's holdings is insufficient for another reason. The statute provides that the SEC may determine that a "person" is covered by the 1935 Act even if that person holds less than 10% of the voting securities of a public utility provided the Commission determines that the person

[D]irectly or indirectly (either alone or pursuant to an arrangement or understanding with one or more persons) exercise such a controlling influence over the management or policies of the public utility ... as to make it necessary in the public interest or for the protection of investors or consumers that such person be subject to the obligations, duties, and liabilities imposed by this chapter upon holding companies.

15 U.S.C. § 79b(a)(7)(B).

Because of the purpose behind the acquisition of K–N stock by the filing group, it is possible that the SEC, pursuant to this statutory section, might find the group to be a "holding company" within the meaning of the 1935 Act and subject to the obligations, duties and liabilities imposed by the 1935 Act. This possibility and the consequences of such a determination should have been revealed in the Schedule 13D filed by the group on October 25, 1982.

## VII.

Finally, the plaintiff alleges that the defendants have failed to reveal violations of common law fiduciary duties, as well as violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968. We find no evidence to support either of these claims.

■ The claim of violations of common law fiduciary duties is based entirely on the fact that various members of the filing group received information regarding K–N from former K–N employees. The plaintiff has done no more than allege that the information that was received was confidential and that those who passed the information were in a continuing fiduciary relationship with the plaintiff. However,

there is simply no evidence to support these bare allegations.

 Similarly, there is no evidence before us to support the claim that the defendants violated the RICO Act during the acquisition of the common stock of K–N. Specifically, the plaintiff has failed to show two related instances of fraudulent activity sufficient to suggest a pattern of racketeering activity. In addition, there is a question whether the RICO Act should be applied in cases where a remedy is provided by pre-existing federal securities laws. As one Court has noted

> While RICO utilizes and sometimes expands upon offenses designated as racketeering activities, there is no evidence that it was meant to pre-empt or supplement the remedies already provided by those statutes which define a predicate RICO offense.

*Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002, 1007 (C.D. Cal., 1982)

RICO should not be applied in such a way as to encompass every possible fraudulent activity, *Noland v. Gurley, Merrill Lynch Pierce Fenner & Smith, Inc. and E.F. Hutton & Company,* 566 F.Supp. 210 (D.Colo.1983).

## VIII.

 The defendants contend that any equitable relief sought by the plaintiff should be denied because of plaintiff's "unclean hands". The purpose of Section 13(d) of the 1934 Act is not to protect the existing management of the issuer, but to provide material information to the shareholders of the issuer as well as to potential investors and the market as a whole. The fact that management may have withheld information from the public does not negate the necessity that a Schedule 13D provide the information required by the statute.

To bar equitable relief on the grounds that management has also acted improperly would ignore the rights of the true party in interest and add to the information withheld from investors and shareholders. While existing management may have ulterior motives in seeking injunctive relief for alleged violations of Section 13(d), such relief will be granted only to protect shareholders and the investing public from irreparable harm that results when the Section is violated. The alleged "unclean hands" on the part of the plaintiff is not a bar to the injunctive relief sought in this case. We reject this contention of defendants.

## CONCLUSION

We have determined that the Schedule 13D filed jointly by Gulf Interstate Company, The Applachian Company, Mark J. Millard, Raja W. Sidawi, Energy Enterprise Overseas, N.V. and Westpool Investment Trust, P.L.C., on October 25, 1982, as amended on January 7, 1983, is false and misleading. It is not in compliance with the requirements set forth in Section 13(d) of the 1934 Act. The Schedule 13D fails to provide a clear statement of the purpose(s) behind the acquisition of more than 5% of the outstanding common stock of the plaintiff, K–N Energy. Further, the Schedule 13D fails to provide sufficient information in regard to the impact of the filing group's purpose on the applicability of the 1935 Act to the operations of K–N Energy.

We have also determined that the shareholders of K–N Energy as well as the investing public have suffered and will continue to suffer irreparable injury until a true and correct Schedule 13D is filed with the Securities and Exchange Commission and with the issuer, K–N Energy.

## ORDER

The Court has determined that there are genuine issues of material fact presented by this case and, accordingly, defendants' Motion for Summary Judgment is *DENIED*. Further, because we have found that an issuer has standing to sue under Section 13(d) of the 1934 Securities Exchange Act, the defendants' Motion to Dismiss is also *DENIED*.

The plaintiff has failed to prove its claim as against the defendant, Shearson/Ameri-

can Express. Accordingly, as to that defendant the Clerk of the Court is *DIRECTED* to enter Judgment in favor of Shearson/American Express and against the plaintiff, K–N Energy, Inc.

Further, the Court finds that the remaining defendants, specifically Gulf Interstate Company, The Appalachian Company, Mark J. Millard, Raja W. Sidawi, Energy Enterprises Overseas, N.V., and Westpool Investment Trust, P.L.C., (the so-called "filing group"), have violated Section 13(d) of the 1934 Securities Exchange Act. The Schedule 13D filed by the group on October 25, 1982, was false and misleading in failing to divulge the true purpose behind the acquisition of the common stock of K–N Energy, Inc. Further the filing group failed to adequately describe the impact that the true purpose might have on the applicability of the Public Utility Holding Company Act of 1935 to the operations of K–N Energy, Inc. Accordingly, it is *ORDERED* that the members of the filing group, together with their agents, servants, employees and all other persons acting on their behalf, directly or indirectly, are *PERMANENTLY ENJOINED* from:

1. Acquiring or attempting to acquire any shares of K–N Energy, Inc.;

2. Soliciting any proxy, consent or authorization with respect to K–N Energy, Inc. stock; and

3. Making or attempting to make any tender, offer or request or invitation for tenders of any K–N Energy, Inc. stock.

This *ORDER* shall remain in effect until thirty (30) days after the date a true and correct Schedule 13D is filed with the Securities and Exchange Commission, as well as with the issuer, K–N Energy, Inc. To the extent described above the plaintiff's request for permanent injunctive relief is *GRANTED.* To the extent the plaintiff, K–N Energy, Inc., seeks injunctive relief beyond that described above, that request is *DENIED.*

The Clerk of the Court is *DIRECTED* to enter judgment in favor of the plaintiff and against the defendants, Gulf Interstate Company, The Appalachian Company, Mark J. Millard, Raja W. Sidawi, Energy Enterprises, N.V., and Westpool Investment Trust, P.L.C., on Count II of the plaintiff's Second Amended and Supplemental Complaint. On Counts I, III, IV and V, the Clerk of the Court is *DIRECTED* to enter judgment in favor of the defendants and against the plaintiff, K–N Energy, Inc.

The foregoing constitutes this Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Each party to bear their own costs.