WAVERLY D. CRENSHAW, JR., CHIEF UNITED STATES DISTRICT JUDGE
When Gaylon Lawrence attempted a creeping takeover of Capstar Financial Holdings, Inc. ("Capstar"), by buying over 10% of Capstar's stocks, Capstar filed this action to stop him. Before the Court is Defendants' Motion to Dismiss. (Doc. No. 22.) For the following reasons, the Motion is granted in part and denied in part.
I. ALLEGATIONS
After four years of growth, on July 1, 2016, Capstar filed a preliminary prospectus for an initial public offering of its common stock on the NASDAQ Global Select Market. (Doc. No. 1 at 5.) Days later, Lawrence called Capstar's Chief Executive Officer Claire Tucker and indicated that he would like to acquire Capstar. (Id. ) On behalf of Capstar, Tucker rejected Lawrence's advances, but informed him that she would notify the Chairman of Capstar's Board of Directors, Dennis Buttorff, of Lawrence's interest. (Id. ) Lawrence then called Buttorff himself and arranged a lunch meeting to express his desire to acquire Capstar. (Id. )
On August 29, 2016, Capstar filed a registration statement with the Securities and Exchange Commission. (Id. ) Two days later, The Lawrence Group, a company Lawrence uses as his "investment vehicle" (id. at 1) but is not registered with the Federal Reserve Board as a bank holding company (id. at 15), submitted a letter proposal offering to acquire Capstar or, alternatively, a majority of its shares. (Id. at 5-6.) Two days later, Capstar's Board of Directors voted unanimously to decline The Lawrence Group's proposal and proceed with Capstar's initial public offering. (Id. at 6.) The Lawrence Group subsequently sent letters to two of Capstar's largest shareholders and separately requested to purchase all of their stock, totaling more than 30% of Capstar's stock. (Id. ) The shareholders declined. (Id. )
Eleven months after Capstar released its initial public offering, Lawrence began purchasing Capstar stock. (Id. ) On August 11, 2017, Lawrence filed a Schedule 13D form with the Securities and Exchange Commission, which is required whenever a person or group acquires over five percent of a company's stock. (Id. at 7.) The Schedule 13D indicated that Lawrence was purchasing *797 stock that, in the aggregate, would put him as a 6.2 percent owner. (Doc. No. 20-1 at 3.) Lawrence described his purpose of acquiring Capstar's stock under Item 4 of the form:
The Reporting Person acquired the securities described in Schedule 13D for investment purposes, and he intends to review his investments in the Issuer on a continuing basis. Any actions the Reporting Person might undertake may be made at any time and from time to time without prior notice and will be dependent upon the Reporting Person's review of numerous factors....
Depending upon overall market conditions, other investment opportunities available to the Reporting Person, and the availability of the Issuer's securities at prices that would make the purchase or sale of the Issuer's securities desirable, the Reporting Person may acquire additional securities of the Issuer, or retain or sell all or a portion of the securities then held, in the open market or in privately negotiated transactions.
The Reporting Person and his representatives may, from time to time, engage in discussions with members of the management and the board of directors of the Issuer.... Except as set forth above, the Reporting Person has no present plans or proposals which relate to or would result in any of the transactions required to be described in Item 4 of Schedule 13D.
(Id. at 4.) Two weeks later, Lawrence amended his Schedule 13D to reflect that he had purchased more stock and he was a 7.2 percent owner of Capstar. (Doc. No. 1 at 7; Doc. No. 20-2.) He did not amend his Item 4 disclosure. (Doc. No. 1 at 7; Doc. No. 20-2.) Lawrence amended his Schedule 13D three more times in the next two months, each time increasing the percentage of stock he owned, but he never amended his Item 4 disclosure. (Doc. No. 1 at 7; Doc. No. 20-3; Doc. No. 20-4; Doc. No. 20-5.) His final disclosure, filed on October 17, 2017, indicated that he had purchased in the aggregate 10.2 percent of Capstar's shares. (Doc. No. 1 at 7.) The Schedule 13D disclosures did not mention The Lawrence Group, but instead disclosed that Lawrence himself owned the stock. (Id. at 8-9.) Lawrence did not notify the Federal Reserve Board that he intended to purchase over ten percent of Capstar's stocks. (Id. at 10.)
II. Standard of Review
For the purposes of a motion to dismiss under Rule 12(b)(6), the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).
III. Analysis
The Complaint alleges three causes of action against Lawrence and The Lawrence Group: (1) filing a misleading Schedule 13D disclosure, in violation of Section 13(d) of the Exchange Act, *798 15 U.S.C § 78m(d) ; (2) failing to notify the Federal Reserve prior to purchasing ten percent of Capstar's securities, in violation of the Change in Bank Control Act, 12 U.S.C. § 1817 ; and (3) that The Lawrence Group controls Lawrence's securities and controls Capstar without being a bank holding company, in violation of Tennessee Code Annotated § 45-2-107. (Doc. No. 1.) Defendants move to dismiss the Complaint in its entirety. (Doc. No. 22.)
A. Section 13(d) of the Exchange Act
Any "person" who "directly or indirectly becomes the beneficial owner of" five percent of stock of a company shall file a report with the Securities and Exchange Commission within ten days of such purchase. 15 U.S.C. § 78m(d)(1). A "person" includes "two or more people act[ing] as a partnership, limited partnership, syndicate or group." Id. at (d)(3). A "beneficial owner" is defined as "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has or shares a direct or indirect pecuniary interest in the equity securities." 17 C.F.R. § 241.16a-1, note to paragraph (a). "When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership." 17 C.F.R. 240.13d-5(b)(1).
The beneficial owner must disclose "if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any major change in its business or corporate structure." 15 U.S.C. § 78m(d)(1)(C). The report shall be filed as a Schedule 13D statement. 17 C.F.R. § 240.13d-1(a). Under Item 4, the "Purpose of Transaction," the reporting persons must state whether they have plans that "relate to or would result in ... the acquisition by any person of additional securities of the issuer, or the disposition of securities of the issuer." 17 C.F.R. § 240.13d-101.
Congress began requiring this report in response "to a gap in the federal securities laws which permitted cash tender offers and other acquisitions resulting in shifts of corporate control to occur without adequate disclosure of information to investors." Gen. Aircraft Corp. v. Lampert, 556 F.2d 90, 94 (1st Cir. 1977) (citing reference omitted). Congress wanted to ensure that investors were informed of potential changes in corporate control to permit them to value the shares accordingly. Id. (citing reference omitted). However, the Act was not meant to "provide a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts." Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). Rather, the Act was meant "to do no more than give incumbent management an opportunity to express and explain its position." Id.
Capstar alleges that Lawrence violated Section 13(d) failing to disclose his intention was to acquire control of Capstar. Lawrence argues that this claim must be dismissed because everything in his Schedule 13D disclosure is truthful, and he was only interested in continuing to acquire stock depending on the market conditions.
Lawrence's argument is the same one courts have rejected time and time again. Although it is true that overstating the definiteness of plans to acquire stock violates Section 13(d), Elec. Specialty Co. v. Int'l Controls Corp., 409 F.2d 937 (2d Cir. 1969), it is well-settled that "Item 4 of *799 Schedule 13D requires disclosure of a purpose to acquire control, even though this intention has not taken shape as a fixed plan." Chromalloy Am. Corp. v. Sun Chem. Corp., 611 F.2d 240, 247 (8th Cir. 1979). In short, a beneficial owner cannot claim that he purchased securities for "investment purposes" when he is actually attempting to acquire control. See Gen. Aircraft Corp. v. Lampert, 556 F.2d 90, 95-96 (1st Cir. 1977) (affirming the district court's granting of a preliminary injunction because defendants misled investors by stating its purpose in acquiring shares was "for the purpose of investment rather than acquisition of control"); K-N Energy, Inc. v. Gulf Interstate Co., 607 F.Supp. 756, 768 (D. Col. 1983) (holding that a "person or group filing a Schedule 13D may not use 'investment' as a catch-all purpose when plans for implementing another purpose," such as obtaining control of the issuer, are "indefinite or undeveloped" because it is misleading). The allegations in the Complaint are sufficient to support an inference that Lawrence intended to take control of Capstar. Lawrence did not disclose that purpose in his Schedule 13D, but instead only stated that his acquisition of Capstar stock was for "investment purposes." Like in General Aircraft Corp and K-N Energy, Inc., Capstar has sufficiently alleged that statement was potentially misleading to investors and did not accurately describe Lawrence's purpose in acquiring stock.
Capstar also plausibly pleaded that Lawrence and The Lawrence Group acted as a group. The Complaint alleges that Lawrence acted through the Lawrence Group to make multiple offers to purchase stock and that Lawrence has given power of attorney to control his securities to The Lawrence Group. (Doc. No. 1 at 6, 9, 12.) This is sufficient to give rise to a reasonable inference that he acted with The Lawrence Group as a group in purchasing 10.2 percent of Capstar's shares, which would have to be disclosed on a Schedule 13D.
Defendants also argue that the Court should dismiss any claim for damages or for divestiture of stock because such relief is not available under Section 13(d). Capstar concedes that damages are not available. (Doc. No. 33 at 16.) However, divestiture may be awarded in a "proper case" where an injunction requiring Defendants to amend their Schedule 13D would not be an adequate remedy. ICN Pharms., Inc. v. Khan, 2 F.3d 484, 491 (2d Cir. 1993) (citing Hanna Mining Co. v. Norcen Energy Resources Ltd., 574 F.Supp. 1172, 1202-03 (N.D. Oh. 1982) ). For example, in ICN Pharmaceuticals, the defendant participated in illegal insider trading of the plaintiff's common stock, and the court found that divestiture of the illegally-acquired shares was appropriate to prevent the defendant from voting its illegal shares. Id. In Hanna Mining Co., the Northern District of Ohio ordered divestiture of stock when the defendant had a tender offer in place because the defendant engaged in a "manipulative scheme." 574 F.Supp. at 1202. It relied on the Security and Exchange Commission's position that the appropriate equitable remedy for violations of Section 13(d) includes "any relief appropriate under the circumstances," including "rescission and divestiture." Id. (citing reference omitted). The ultimate equitable relief is a question of fact that is inappropriate to determine at the motion to dismiss stage.
B. Change in Bank Control Act
Capstar alleges that Defendants violated the Change in Bank Control Act by failing to give the Federal Reserve Board notice prior to purchasing ten percent of Capstar's stock. Defendants argue that there is no private cause of action under the Act. Defendants have since given notice to the Federal Reserve Board, and the administrative proceeding is pending regarding whether the Federal Reserve Board will *800 allow Lawrence to purchase up to fifteen percent of Capstar's stock. (Doc. No. 165 at 2; Doc. No. 20-6.)
"No person, acting directly or indirectly or through or in concert with one or more persons, shall acquire control of any insured depository institution through a purchase, assignment, transfer, pledge, or other disposition of voting stock of such insured depository institution unless the appropriate Federal banking agency has been given sixty days' prior written notice of such proposed acquisition and within that time period the agency has not issued a notice disapproving the proposed acquisition." 12 U.S.C. § 1817(j)(1). There is a rebuttable presumption of control if the result of any purchase of securities would give the purchasing person power to vote ten percent or more of any class of voting securities of the institution and if "no other person will own, control, or hold the power to vote on a greater percentage of that class of voting securities immediately after the transaction." 12 C.F.R. § 225.41(c)(2).
The Change in Bank Control Act gives district courts limited jurisdiction over purchasers of securities. It gives district courts the power to enjoin defendants to notify the Federal Reserve Board and to issue subpoenas for the Federal Reserve Board's investigations. 12 U.S.C. § 1817(j)(15)(C)(i). District courts also can issue injunctions at the Federal Reserve Board's request. 12 U.S.C. § 1817(j)(15)(C)(ii). Even if the Change in Bank Control Act gives Capstar a private right of action, because Capstar is not the Federal Reserve Board, Capstar would only be able to request that the Court order Defendants to give notice to the Federal Reserve Board. 12 U.S.C. § 1817(j)(15)(C)(i). Because Defendants have done so (Doc. No. 20-6), this claim is dismissed as moot.[1]
C. Tennessee Code Annotated § 45-2-107
Capstar alleges that The Lawrence Group is not a bank holding company, and therefore is not allowed to acquire or control a bank. It is true that the statute prohibits exactly that. Tenn. Code Ann. § 45-2-107. Defendants argue that Lawrence purchased the Capstar securities, and the statute does not prohibit an individual from controlling a bank. However, as the Court previously held, the Complaint plausibly pleaded that Lawrence is acting as a group with The Lawrence Group to control the bank. Therefore, this claim will also be permitted to proceed.
The Court will enter an appropriate order.

It also appears to be moot because Lawrence no longer owns over ten percent of Capstar's stock. (Doc. No. 58 at 3 n.2.)